**Margie C. BARNES,**
**Plaintiff-Appellant,**

v.

**ATLANTIC & PACIFIC LIFE INSUR-**
**ANCE COMPANY OF AMERICA, a**
**corporation, Defendant-Appellee.**

**No. 73–4032**
**Summary Calendar.***

United States Court of Appeals,
Fifth Circuit.

June 16, 1975.

* Rule 18, 5 Cir.; see Isbell Enterprises, Inc. v. Citizens Casualty Company of New York et al., 5 Cir. 1970, 431 F.2d 409, Part I.

E. Ray Large, Birmingham, Ala., for plaintiff-appellant.

Ollie L. Blan, Jr., Birmingham, Ala., for defendant-appellee.

Before BROWN, Chief Judge, and THORNBERRY and AINSWORTH, Circuit Judges.

JOHN R. BROWN, Chief Judge:

This is a historic case, not because of the intrinsic difficulty of the issues, but because this is our first published opinion utilizing the certification provisions recently adopted by the citizens of Alabama.[1] We have repeatedly been the judicial beneficiaries of similar such procedures permitted by Florida[2] and more recently Louisiana[3] and now we welcome the opportunity to refer to the Supreme Court of Alabama questions of Alabama law on which it is not only the latest word—as we might *Eiriely* be—but the last word.

This technique of certification to the highest court of a state under carefully controlled restrictions of important and doubtful questions[4] has just recently been given another boost by the Supreme Court.[5]

1. Alabama Constitution Art. VI, § 140(b)(3).

6.02. The Supreme Court.

(a) The supreme court shall be the highest court of the state and shall consist of one chief justice and such number of associate justices as may be prescribed by law.

(b) The supreme court shall have original jurisdiction (1) of cases and controversies as provided by this Constitution, (2) to issue such remedial writs or orders as may be necessary to give it general supervision and control of courts of inferior jurisdiction, and (3) *to answer questions of state law certified by a court of the United States.*

2. A. R. Moyer, Inc. v. Graham, 5 Cir., 1974, 492 F.2d 797; West v. Caterpillar Tractor Co., Inc., 5 Cir., 1974, 504 F.2d 967;

Coastal Petroleum v. Secretary of Army, 5 Cir., 1973, 489 F.2d 777, 779, n. 5, on rehearing, 1974, 491 F.2d 973;

Allen v. Estate of Carman, 5 Cir., 1971, 446 F.2d 1276, on certification, Fla., 1973, 281 So.2d 317, on receipt of answers to certification, 5 Cir., 1973, 486 F.2d 490; National Education Association, Inc. v. Lee County Board of Public Instruction, 5 Cir., 1971, 448 F.2d 451, on certification, Fla., 1972, 260 So.2d 206, on receipt of answers to certification, 5 Cir., 1972, 467 F.2d 447; Gordon v. John Deere Company, 5 Cir., 1971, 451 F.2d 234, on certification, Fla., 1972, 264 So.2d 419, on receipt of answers to the certification, 5 Cir., 1972, 466 F.2d 1200; Boyd v. Bowman, 5 Cir., 1971, 443 F.2d 848, on certification, Fla., 1971, 256 So.2d 1. On receipt of answers to certification, 5 Cir., 1972, 455 F.2d 927; Martinez v. Rodriquez, 5 Cir., 1968, 394 F.2d 156, on certification, Fla., 1968, 215 So.2d 305, on receipt of answers to certification, 5 Cir., 1969, 410 F.2d 729; Life Ins. Co. of Va. v. Shifflet, 5 Cir., 1967, 370 F.2d 555, on certification, Fla., 1967, 201 So.2d 715, on receipt of answers to certification, 5 Cir., 1967, 380 F.2d 375; Hopkins v. Lockheed Aircraft Corp., 5 Cir., 1966, 358 F.2d 347, on certification, Fla., 1967, 201 So.2d 743, on receipt of answers to certification, 5 Cir., 1968, 394 F.2d 656; Green v. American Tobacco Co., 5 Cir., 1962, 304 F.2d 70, on rehearing, 304 F.2d 85, on certification, Fla., 1963, 154 So.2d 169, on receipt of answers to certification, 5 Cir., 1963, 325 F.2d 673, cert. denied, 1964, 377 U.S. 943, 84 S.Ct. 1349, 12 L.Ed.2d 306, on appeal after retrial, 391 F.2d 97, rehearing en banc denied, 1969, 409 F.2d 1166; Clay v. Sun Ins. Office, Ltd., 1960, 363 U.S. 207, 80 S.Ct. 1222, 4 L.Ed.2d 1170, on certification upon remand, Fla., 1961, 133 So.2d 735, on receipt of answers to certification, 5 Cir., 1963, 319 F.2d 505, reversed, 1964, 377 U.S. 179, 84 S.Ct. 1197, 12 L.Ed.2d 229. See W. S. Ranch Co. v. Kaiser Steel Corp., 10 Cir., 1968, 388 F.2d 257, 265 (dissenting opinion), reversed, 391 U.S. 593, 88 S.Ct. 1753, 20 L.Ed.2d 835.

3. United States v. Buras, 5 Cir., 1972, 475 F.2d 1370 (Brown, C. J., dissenting), cert. denied, 1973, 414 U.S. 865, 94 S.Ct. 129, 38 L.Ed.2d 117.

4. With Florida having for FY 1973 and FY 1974 428 and 487 civil cases respectively, it is clear that the cases certified (see n. 2, supra) are small in numbers and percentages too. In short, we use much judgment, restraint and discretion in certifying. We do not abdicate.

5. See Lehman Bros. v. Schein, 1974, 416 U.S. 386, 94 S.Ct. 174, 40 L.Ed.2d 215 in which Justice Douglas writing for the court, suggested that the Court of Appeals for the Second Circuit consider whether the case should be certified to the Florida Supreme Court in view of the fact that Florida law was applicable but was uncertain because of the novelty of the question.

As is our regular practice, we obtained from counsel their agreed questions and stipulated facts and present them here for the use of the Alabama Supreme Court. As the case comes to us, the sole question for decision is whether pursuant to a (1) binding receipt or (2) policy itself a policy of life insurance was in effect covering appellant/beneficiary's deceased husband at the time of his death.

 In resolving this question, the District Judge found against the Insured on both the facts and the Alabama law and granted the Insurer's motion for summary judgment. While we do not denigrate the conclusions of the District Judge, we select the certification option because of the uncertainty of the Alabama law governing this case. This uncertainty coupled with the not infrequent result that a Federal Court of Appeals is "reversed" by the highest court of the *Erie* state [6] make this a peculiarly appropriate case for certification. Indeed, it is precisely these ordinary, repetitive contract interpretations which, because of their recurring nature involving literally hundreds of contracts with many public policy factors affecting the welfare of local citizens, call for unequivocal resolution by the final court.

 We are acutely aware of how identical contract language takes on diverse meanings when viewed from opposite sides of that imaginary line separating two adjacent states. Understandably, policy considerations differ in their impact on the jurisprudence of individual states.[7] When the state law is in doubt especially on the underlying public policy aims, it is in the best administration of justice to afford the litigants a consistent final judicial resolution by utilizing the certification procedure.

## Summary Of The Arguments Pro and Con

In order to reduce the case to more manageable proportions, we summarize in brief the arguments of the litigants. In seeking to establish coverage under the Binding Receipt, the Insured maintains that Condition 3 (set out in the certificate at page 12, *infra*) should be construed as allowing the insurer to reject the application within the 30-day period. Absent such rejection, the policy should be deemed in effect as of the date of application. Moreover issuance of the policy on November 5—after the 30-day conditional period had elapsed—amounted to a waiver of Condition 3 and created coverage that reverted to the date of the initial Binder Receipt, September 8.

In addition, the Insured theorizes that the policy paragraph controlling the effective date of the policy (as shown in the certificate at page 14, *infra*) reactivated the binder. This paragraph, the Insured reasons, creates ambiguity in determining whether the provisions of the binder or the policy control where the conditions of the binder are not met and such an ambiguity should be resolved in favor of the Insured. New York Life Ins. Co. v. Torrance, 224 Ala. 614, 141 So. 547 (1932).

Conversely, the Insurer maintains that the Insured's construction of Condition 3 is in effect an impermissible attempt to create primary liability through waiver. *See,* Protective Life Insurance Co. v. Cole, 1935, 230 Ala. 450, 161 So. 818 (1935); St. Paul Fire & Marine Insurance Co. v. Air Comfort Engineers, Inc., 47 Ala.App. 301, 253 So.2d 525 (1971). *Cf.* Kaminer v. Franklin Life Insurance Co., 5 Cir., 1973, 472 F.2d 1073.

6. See cases summarized in United Services Life Ins. Co. v. Delaney, 5 Cir., 1964, 328 F.2d 483, 486–87 (Brown, J., concurring); United States v. Buras, 5 Cir., 1972, 475 F.2d at 1373, n. 5; W. S. Ranch Co. v. Kaiser Steel Corp., 10 Cir., 1967, 388 F.2d at 265, n. 14 & 15 (Brown, J., dissenting in part).

See also, Lehman Bros. v. Schein, 416 U.S. at 390, n. 6, 94 S.Ct. 1741.

7. See, for example, the difference between *Texas and Florida on interpretation of similar* insurance statutes and policy provisions and between Texas and Louisiana. American Agricultural Chem. Co. v. Tampa Armature Works, 5 Cir., 1963, 315 F.2d 856, 862–63 (Brown, J. specially concurring).

As an alternative argument, the Insured contends that even if the policy did not become effective pursuant to the binder, the policy was activated prior to the date of death when it was mailed to the Insurer's agent on November 6. As support the Insured points to the fact that under Alabama law, the placing of a policy in the mail to the soliciting agent constitutes delivery to the Insured. *See,* United Insurance Company of America v. Headrick, 275 Ala. 594, 157 So.2d 19 (1963); Life and Casualty Insurance Company of Tennessee v. Latham, 255 Ala. 160, 50 So.2d 727 (1951). Therefore, delivery within the meaning of the policy provision occurred on November 6 when the assistant secretary of the Insurer placed the policy in the mail to the agent. Under this theory of Insured's case, the question then is whether the proposed Insured remained in a state of "continued insurability"—the other prerequisite for the effectuation of the policy—as of the date of delivery.

While there is no Alabama precedent precisely on point, the Insurer in response cites some relevant Alabama case law. *Cf.* Southern States Life Ins. Co. v. Dunckley, 226 Ala. 588, 148 So. 320 (1933); Cherokee Life Ins. Co. v. Brannum, 203 Ala. 145, 82 So. 175 (1919). Additional weight is added to the Insurer's position by the legion of Alabama cases construing the more common "good health at the time of delivery" provision as a warranty, the breach of which allows the Insurer to avoid liability where the risk is materially increased. See, e. g., North Carolina Mutual Life Ins. Co. v. Coleman, 248 Ala. 32, 26 So.2d 120 (1946); Vredenburgh v. Liberty National Life Ins. Co., 246 Ala. 251, 20 So.2d 207 (1944); Protective Life Ins. Co. v. Fischer, 234 Ala. 436, 175 So. 391 (1937). Moreover, Insured notes the analogous law of other states on this point. See Mathews v. Metropolitan Life Co., 89 So.2d 641 (1956, Fla.); Leach v. Millers Life Ins. Co., 5 Cir., 1968, 400 F.2d 179 (Miss.).

## QUESTIONS CERTIFIED

CERTIFICATION FROM THE UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT TO THE SUPREME COURT OF ALABAMA, PURSUANT TO ALABAMA CONSTITUTION ARTICLE 6, SECTION 140(b)(3)

To the Supreme Court of Alabama and the Honorable Justices thereof

It appears to the United States Court of Appeals for the Fifth Circuit that the above-styled case in this Court involves a question or proposition of the law of the state of Alabama which is determinative of the cause, and there appear to be no clear, controlling precedents in the decisions of the Supreme Court of Alabama. This Court certifies the following questions of law to the Supreme Court of Alabama for instructions concerning said questions of law, based on the facts recited therein, pursuant to Alabama Constitution Article 6, Section 140(b)(3); such case being an appeal from the United States District Court for the Northern District of Alabama.

## MATTERS ON WHICH COUNSEL FOR THE PARTIES ARE IN AGREEMENT

### STATEMENT OF FACTS

H. M. McClendon, the defendant-appellee's soliciting agent, first called upon Robert O. Barnes and Margie C. Barnes, husband and wife, in August of 1970 soliciting their application for insurance upon the life of Robert O. Barnes on behalf of the defendant-appellee. Agent McClendon represented to the Barnes that a monthly automatic premium check-off at the Barnes' bank in Columbiana, Alabama would be made by the defendant-appellee. H. M. McClendon again called upon Robert O. Barnes, the insured, and Margie C. Barnes, the Beneficiary, husband and wife, on September 8, 1970 at their home in Columbiana, Alabama; and he secured an application for life insurance and an initial premium payment by cash of Twenty-two and

47/100 Dollars ($22.47) from Robert O. Barnes giving him in return a Binding Receipt. The application was for a policy of life insurance in the amount of $10,000. The premium for a $10,000 policy of life insurance of the type policy applied for by Robert O. Barnes was $21.57 per month. Said printed Binding Receipt reflects in Agent McClendon's handwriting the receipt of a Twenty-two and 47/100 Dollar ($22.47) initial monthly premium and "amount . . . $10,000.00 . . . $20,000.00." The Binding Receipt stipulates the effective date of the policy will be the later of:

"date of application, or date of medical examination, if required, provided that the

1. proposed insured is determined by the Company at its Home Office in Atlanta, Georgia, in accordance with its rules and practices, to be insurable on such date for the policy exactly as applied for;

2. first full premium is paid in cash on date of application;

3. policy is issued exactly as applied for within 30 days from this date;

4. total insurance in force with the Company on the life of the proposed insured, including amount now applied for, will not exceed $50,000.00."

The application was filled out by Agent McClendon, signed by Robert O. Barnes and provided, *inter alia,* medical information to the company. There had been discussion between Agent McClendon and Robert O. Barnes about additional coverage for accidental death. No notation was made on the application concerning any double indemnity coverage for accidental death, except there was a premium notation of payment in advance of $22.47 on the application— the total amount of premium including accidental death benefits coverage on a policy as applied for by Barnes. The application was referred to in and made a part of the policy. Robert O. Barnes disclosed on the application that he had a lung operation at Prattsburg Air Force Base, New York, while in military service. "A week or two after McClendon took Barnes' application" he returned to Barnes' residence and secured Barnes' signature to a medical authorization form to be used by the defendant-appellee's underwriting department in determining if they were to issue the policy. No further contract was made between McClendon or defendant-appellee with Robert O. Barnes or his beneficiary until after his death on November 13, 1970.

The binding receipt was never sent to defendant by its agent. The application was forwarded to defendant and was processed for a policy of life insurance in the amount of $10,000.

On November 4, 1970 the insured was admitted to the Veterans' Administration Hospital in Birmingham, Alabama with gunshot wounds to the face and died on November 13, 1970 due to cerebral concussion and hemorrhagic pneumonia.

On November 6, 1970 defendant prepared a policy of life insurance on the life of Robert O. Barnes in the amount of $10,000 with an effective date of November 5, 1970 and with an initial premium of $21.57. This policy was mailed to defendant's agent for delivery to Robert O. Barnes along with a letter dated November 5, 1970, addressed to Robert O. Barnes, referring to Policy Number 70K2580, reflecting a carbon copy to "Agent: H. M. McClendon" and enclosed therewith "Receipt for First Premium and Record of First Payment." Neither defendant nor its agent had any knowledge on November 6, 1970 or prior thereto that Robert O. Barnes had suffered gunshot wounds on November 4, 1970 and was in the hospital on November 6, 1970.

Agent McClendon attempted physical delivery of the policy to the Barnes' home on November 14, 1970—the funeral date of Robert O. Barnes. Defendant's agent did not know when he attempted to deliver the policy to Robert O. Barnes on November 14, 1970 that Robert O. Barnes had been shot and had died the day before. When he learned Mr. Barnes was dead, the agent mailed the policy back to defendant's Home Office.

On December 4, 1970 the defendant-appellee mailed its check payable to the

plaintiff-appellant for Twenty-two and 47/100 Dollars ($22.47) stating "during our investigation of the pending application pertaining to his past medical history, we were unable to issue and deliver the insurance policy as he applied for during his good health, insurability and lifetime." This quoted verbiage is taken from that paragraph of the policy which is styled "Effective Date" except the words "good health" are added by the writer thereof—C. Ervin Waller, President of defendant-appellee. The paragraph in the policy entitled "Effective Date" is as follows:

"Effective Date—This policy will be effective as soon as it has been delivered to the owner and the first premium has been paid during the lifetime and continued insurability of the proposed insured. If the first premium is paid in exchange for a binding receipt on the date of application, then this policy will become effective as provided in the binding receipt."

## QUESTIONS FOR ALABAMA SUPREME COURT

1. Does the insurer's failure to issue the policy exactly as applied for within 30 days of the date of application preclude coverage from attaching as of the date of application pursuant to Condition 3 of the binding receipt?

2. Was there a waiver of Condition 3 of the binding receipt by the insurer's issuance of a policy after 30 days from the date of application without knowledge that the insured had become unin-

surable before the date the policy was prepared and issued?

3. Did the policy clause providing that "this policy will be effective as soon as it has been delivered to the owner and the first premium has been paid during the lifetime and *continued insurability* of the proposed insured" preclude coverage under the policy from attaching as of November 6, the date in which the insurer placed the policy in the mail to its agent, in view of the fact that the decedent was admitted to a Birmingham hospital on November 4 suffering from a gunshot wound which ultimately resulted in death on November 13 when the evidence shows insurer had no knowledge of the injury to the insured?

4. Does the insurer's statement that the policy was issued on the basis of medical furnished with the application estop the insurer to deny coverage from the date of the Binding Receipt although the policy was not issued within 30 days *even though insurer was unaware at the time it made the statement that the insured had become uninsurable?*[8]

5. Is there an ambiguity between the policy and the Binding Receipt concerning the effective date of the policy? If so, which provision controls under the facts of this case?[9]

■ The entire record in this case, the Court's opinion, together with copies of the briefs of the parties the letter directive, counsels' memoranda on certification, proposed certification with differences and all of the papers are transmitted herewith.[10]

---

**8.** Insurer objects to this question but at its suggestion we have included the underscored addendum to the question proposed by the Insured.

**9.** The Insured requested this issue: "When there is ambiguity between the policy and the Binding Receipt concerning effective date of the policy, and the construction given to the Binding Receipt favors the insured's beneficiary, which shall control?"

Insurer objected to this Question 5 as proposed by Insured because it assumed an ambiguity exists between the policy and the binding receipt. Consequently in its place, the In-

surer proposed the question we are submitting.

**10.** We repeat again what we often have said:

"[T]he particular phrasing used in the certified question is not to restrict the Supreme Court's consideration of the problems involved and the issues as the Supreme Court perceives them to be in its analysis of the record certified in this case. This latitude extends to the Supreme Court's restatement of the issue or issues and the manner in which the answers are to be given, whether as a comprehensive whole or in subordinate or even contingent parts." Martinez v. Rodriquez, 5 Cir., 1968, 394 F.2d 156, 159, n.6.