325 So.2d 143

**Margie C. BARNES**

v.

**ATLANTIC & PACIFIC LIFE INSURANCE COMPANY OF AMERICA, a corporation.**

**CER–3.**

Supreme Court of Alabama.

Dec. 18, 1975.

150

E. Ray Large, Birmingham, for plaintiff-appellant.

Ollie L. Blan, Jr., Birmingham, for defendant-appellee.

CERTIFICATE FROM THE UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT TO THE SUPREME COURT OF ALABAMA, PURSUANT TO ARTICLE 6, SECTION 140(b)(3) OF THE CONSTITUTION OF ALABAMA OF 1901, AS AMENDED

BLOODWORTH, Justice.

The plaintiff, Margie C. Barnes, began this litigation by filing suit in the United States District Court, Northern District of Alabama, Southern Division, seeking to recover, as the beneficiary, the proceeds due under a life insurance policy. The district judge, determining that there was no genuine issue as to any material fact and that the insurer was entitled to judgment as a matter of law, granted the insurer's motion for summary judgment. The plaintiff beneficiary has appealed the district judge's decision to the Court of Appeals for the Fifth Circuit.

Encountering uncertainty in the Alabama law, the Court of Appeals has posed certain certified questions to us under provisions of the Alabama Constitution, Article 6, § 140(b)(3). The questions are:

1. Does the insurer's failure to issue the policy exactly as applied for within 30 days of the date of application preclude coverage from attaching as of the date of application pursuant to Condition 3 of the binding receipt?

2. Was there a waiver of Condition 3 of the binding receipt by the insurer's issuance of a policy after 30 days from the date of application without knowledge that the insured had become uninsurable before the date the policy was prepared and issued?

3. Did the policy clause providing that "this policy will be effective as soon as it has been delivered to the owner and the first premium has been paid during the lifetime and *continued insurability* of

the proposed insured" preclude coverage under the policy from attaching as of November 6, the date in which the insurer placed the policy in the mail to its agent, in view of the fact that the decedent was admitted to a Birmingham hospital on November 4 suffering from a gunshot wound which ultimately resulted in death on November 13 when the evidence shows insurer had no knowledge of the injury to the insured?

4. Does the insurer's statement that the policy was issued on the basis of medical information furnished with the application estop the insurer to deny coverage from the date of the Binding Receipt although the policy was not issued within 30 days *even though insurer was unaware at the time it made the statement that the insured had become uninsurable?* [8]

5. Is there an ambiguity between the policy and the Binding Receipt concerning the effective date of the policy? If so, which provision controls under the facts of this case? [9]

*Barnes v. Atlantic & Pacific Life Insurance Co.,* 514 F.2d 704, 709 (5th Cir.1975).

The facts of this case as set out by the Court of Appeals and as stipulated by counsel, are as follows:

H. M. McClendon, the defendant-appellee's soliciting agent, first called upon Robert O. Barnes and Margie C. Barnes, husband and wife, in August of 1970 soliciting their application for insurance upon the life of Robert O. Barnes on behalf of the defendant-appellee. Agent McClendon represented to the Barnes that a monthly automatic premium check-off at the Barnes' bank in Columbiana, Alabama would be made by the defendant-appellee. H. M. McClendon again called upon Robert O. Barnes, the insured, and Margie C. Barnes, the Beneficiary, husband and wife, on September 8, 1970 at their home in Columbiana, Alabama; and he secured an application

for life insurance and an initial premium payment by cash of Twenty-two and 47/100 Dollars ($22.47) from Robert O. Barnes giving him in return a Binding Receipt. The application was for a policy of life insurance in the amount of $10,000. The premium for a $10,000 policy applied for by Robert O. Barnes was $21.57 per month. Said printed Binding Receipt reflects in Agent McClendon's handwriting the receipt of a Twenty-two and 47/100 Dollar ($22.47) initial monthly premium and "amount . . . $10,000.00 . . . $20,000.00." The Binding Receipt stipulates the effective date of the policy will be the later of:

"date of application, or date of medical examination, if required, provided that the

1. proposed insured is determined by the Company at its Home Office in Atlanta, Georgia, in accordance with its rules and practices, to be insurable on such date for the policy exactly as applied for;

2. first full premium is paid in cash on date of application;

3. policy is issued exactly as applied for within 30 days from this date;

4. total insurance in force with the Company on the life of the proposed insured, including amount now applied for, will not exceed $50,000.00."

The application was filled out by Agent McClendon, signed by Robert O. Barnes and provided, *inter alia* medical information to the company. There had been discussion between Agent McClendon and Robert O. Barnes about additional coverage for accidental death. No notation was made on the application concerning any double indemnity coverage for accidental death, except there was a premium notation of payment in advance of $22.47 on the application— the total amount of premium including accidental death benefits coverage on a

policy as applied for by Barnes. The application was referred to in and made a part of the policy. Robert O. Barnes disclosed on the application that he had a lung operation at Prattsburg Air Force Base, New York, while in military service. "A week or two after McClendon took Barnes' application" he returned to Barnes' residence and secured Barnes' signature to a medical authorization form to be used by the defendant-appellee's underwriting department in determining if they were to issue the policy. No further contact was made between McClendon or defendant-appellee with Robert O. Barnes or his beneficiary until after his death on November 13, 1970.

The binding receipt was never sent to defendant by its agent. The application was forwarded to defendant and was processed for a policy of life insurance in the amount of $10,000.

On November 4, 1970 the insured was admitted to the Veterans' Administration Hospital in Birmingham, Alabama with gunshot wounds to the face and died on November 13, 1970 due to cerebral concussion and hemorrhagic pneumonia.

On November 6, 1970 defendant prepared a policy of life insurance on the life of Robert O. Barnes in the amount of $10,000 with an effective date of November 5, 1970 and with an initial premium of $21.57. This policy was mailed to defendant's agent for delivery to Robert O. Barnes along with a letter dated November 5, 1970, addressed to Robert O. Barnes, referring to Policy Number 70K2580, reflecting a carbon copy to "Agent: H. M. McClendon" and enclosed therewith "Receipt for First Premium and Record of First Payment." Neither defendant nor its agent had any knowledge on November 6, 1970 or prior thereto that Robert O. Barnes had suffered gunshot wounds on November 4, 1970 and was in the hospital on November 6, 1970.

Agent McClendon attempted physical delivery of the policy to the Barnes' home on November 14, 1970—the funeral date of Robert O. Barnes. Defendant's agent did not know when he attempted to deliver the policy to Robert O. Barnes on November 14, 1970 that Robert O. Barnes had been shot and had died the day before. When he learned Mr. Barnes was dead, the agent mailed the policy back to defendant's Home Office.

On December 4, 1970 the defendant-appellee mailed its check payable to the plaintiff-appellant for Twenty-two and 47/100 Dollars ($22.47) stating "during our investigation of the pending application pertaining to his past medical history, we were unable to issue and deliver the insurance policy as he applied for during his good health, insurability and lifetime." This quoted verbiage is taken from that paragraph of the policy which is styled "Effective Date" except the words "good health" are added by the writer thereof—C. Ervin Waller, President of defendant-appellee. The paragraph in the policy entitled "Effective Date" is as follows:

> "Effective Date—This policy will be effective as soon as it has been delivered to the owner and the first premium has been paid during the lifetime and continued insurability of the proposed insured. If the first premium is paid in exchange for a binding receipt on the date of application, then this policy will become effective as provided in the binding receipt."

514 F.2d at 707–09.

The Court of Appeals has determined that the sole question before it is "whether pursuant to a (1) binding receipt or (2) policy itself a policy of life insurance was in effect covering appellant/beneficiary's deceased husband at the time of his death." 514 F.2d at 706.

Rather than responding to the questions in the form certified, we have followed the

suggestion of the Court of Appeals to direct our attention to what we consider to be the basic issues underlying those questions. See *Martinez v. Rodriquez*, 394 F. 2d 156 (5th Cir. 1968), permitting "the [state] Supreme Court's restatement of the issue or issues and the manner in which the answers are to be given, whether as a comprehensive whole or in subordinate or even contingent parts." *Id.* at 159, n. 6. See also the suggestion of Chief Judge Brown to like effect at footnote 10, p. 709, *Barnes v. Atlantic & Pacific Life Insurance Co.*, supra.

■ Had there been no binding receipt issued on the date of the application, it is clear from our relevant case law that the proposed coverage would never have become effective under the provisions of the policy itself. The policy provides that it "will be effective as soon as it has been delivered to the owner and the first premium has been paid during the lifetime and continued insurability of the proposed insured." Such provisions have been found by this Court to be both "reasonable and valid." *Life & Casualty Insurance Co. v. Latham,* 255 Ala. 160, 164, 50 So.2d 727, 731 (1951). Failure to satisfy the conditions set out in such policy provisions results in a failure of the policy to become effective.

■ In the instant case, coverage failed to become effective under the terms of the policy because the policy was not delivered during the "continued insurability" of the insured. The latter suffered a fatal gunshot wound on November 4, two days prior to the delivery of the policy on November 6. [The policy was placed in the mail that day to the agent.] Under Alabama case law, delivery to the insured is accomplished on the date that the insurer mails the policy to its agent with the intention that the agent turn it over to the insured. *E.g., United Insurance Co. v. Headrick,* 275 Ala. 594, 597, 157 So.2d 19, 22 (1963).

■ We preface our analysis of the effect of the binding receipt by noting that we are in agreement with the following admonition expressed by the Supreme Court of Kansas in its opinion in *Service v. Pyramid Life Insurance Co.,* 201 Kan. 196, 211, 440 P.2d 944, 956–57 (1968):

"There is a great confusion of authority as to the effect to be given such receipts. Because of the similarity of wording usually found in them, attempts have been made to generalize their operation. If these apparently conflicting authorities are examined, however, it becomes clear that these receipts are not capable of general treatment, but must be individually interpreted to give them the effect which the parties intended them to have in each case. The fundamental question is: What was their function?"

Under the terms of the binding receipt at issue in this case, coverage is contingent upon the occurrence of several conditions. The insurer relies on two separate grounds for its assertion that not all of these conditions were met.

1. The insurer bases its first argument on the language of conditions one and three of the binding receipt requiring that the policy be "issued exactly as applied for." The insurer argues that if the insured applied for double indemnity coverage for accidental death, as the beneficiary, his wife, claims, then the policy prepared by the insurer was not "issued exactly as applied for" because it does not include double indemnity coverage. It is further argued that the application for $10,000 coverage with double indemnity for accidental death amounted to an offer to buy insurance and that the policy prepared by the insurer, which did not provide for double indemnity coverage, amounted to a counteroffer and, in effect, was a rejection of the insured's offer.

■ The principles on which the insurer relies are well-established in Alabama law

and have been recently re-stated by this Court in *Life Insurance Co. v. Miller,* 292 Ala. 525, 529, 296 So.2d 900, 903 (1974):

" . . . an application for insurance is a mere offer which does not ripen into a contract until accepted by the insurance company. If the company issues a policy materially different from that applied for, in the eyes of the law, the policy is a rejection of the offer and is a counter-offer which becomes a binding contract only when accepted by the original offeror—the would-be insured."

In *Miller,* the insurer issued a policy incorporating all of the terms of the applicant's offer except the offer premium rate; the policy issued by the insurer up-rated the premium. Construing the policy most strongly against its framer, the insurer, this Court found that the insurer's decision to up-rate the policy was clearly arbitrary and that, therefore, the up-rate should be disregarded in construing the policy, thus precluding the argument that the policy was a counteroffer. For somewhat different reasons, the facts in the instant case also may support the contention that the insurer is estopped from asserting that the policy in question was a counteroffer rather than an acceptance of the insured's offer.

■ The record in this case includes evidence which tends to show that the insured intended to apply for double indemnity coverage for accidental death; that the insurer's agent was aware of the insured's intent; that, through the agent's oversight in filling out the application form for the insured, the agent inadvertently omitted mention of the applied-for double indemnity coverage; and that, at the time the policy was prepared, the insurer was unaware of insured's request for double indemnity coverage. Under this view of the facts, how can it be said that the insurer prepared its policy intending it to be a counteroffer and hence a rejection of the insured's offer?

■ Of even more persuasive force is the rule that

" . . . 'a party who deals with an agent, through whom he applies for and obtains a policy, has a right to presume that such material facts as are made known to him, are known to the principal . . . .' "

*Alabama Mutual Fire Insurance Co. v. Minchener,* 133 Ala. 632, 635, 32 So. 225, 226 (1901). Under that rule an insured would be justified in relying on the insurer's agent to correctly inform the insurer of the terms of the insured's offer and that there ought not to be a denial of coverage merely because of the oversight of the insurer's agent.

Additionally, we would rely on a line of cases which, although not directly on point factually, impress us with their compelling logic. In these cases, the issue was whether the insurer could avoid liability on the ground that the application for insurance misrepresented some fact bearing on the risk of loss the insurer was asked to assume, when the misrepresentation was due to the oversight of the insurer's agent. These cases have been unanimous in their conclusion that

"[1] It is fully settled in this jurisdiction that misrepresentations resulting solely from the act or oversight of the soliciting agent taking the application, without the knowledge of the insured or beneficiary, are not available to the insurer, although the issuing authority acts upon the application as presented, and without knowledge of the misfeasance of its agent."

*Inter-Ocean Casualty Co. v. Ervin,* 229 Ala. 312, 313, 156 So. 844, 845 (1934). Furthermore, it has been held that

" . . . In such case, the defendant will not be permitted to take advantage of the wrongful act, or misconstruction, or mistake, of its own agent, and avoid

the policy, the insured being without fault. * * *"

*Williamson v. New Orleans Insurance Ass'n*, 84 Ala. 106, 108, 4 So. 36, 38 (1887). *Accord, National Life and Accident Insurance Co. v. Allen*, 285 Ala. 551, 234 So.2d 567 (1970); *United Security Life Insurance Co. v. St. Clair*, 41 Ala.App. 243, 130 So.2d 213 (1961).

2. A second ground which the insurer asserts for the nonoccurrence of the conditions required by the binding receipt is the failure of the insurer to issue the policy within 30 days from the date of the application [condition three of the binding receipt]. In reply thereto, the insured argues that this provision was "waived" by issuance of the policy. We do not consider this argument to be persuasive. The insured interprets the 30-day provision to mean that the insurer would be under no legal obligation to issue its policy if it did not do so within a 30-day period. This, we consider to be a misinterpretation of the effect of the 30-day provision. The requirement that the policy be issued within 30 days is nothing more than a condition which must be met in order for coverage to become effective from the date of the application rather than the date of issuance of the policy. For the requirement of issuance within 30 days to be waived by the insurer, there must be a clear manifestation of intent to do so. The mere issuance of a policy at a time subsequent to the 30-day period is not in itself a sufficient manifestation of an intent to waive one of the conditions to coverage under the binding receipt.

Although we find no substance to the waiver argument, there would appear to us to be some support in the record for the argument that the insurer may be estopped from denying coverage on the basis of its failure to issue the policy within 30 days. This argument is founded upon general principles of contract law. Where a promisor's duty to perform is conditioned upon the occurrence of some event wholly within his control, there is an implied duty of good faith and fair dealing owing from the promisor. If the promisor's failure to cooperate results in the nonoccurrence of the condition, the condition is thereby excused. "The justification for the rule which makes prevention or hindrance by the promisor a breach of the duty of good faith and fair dealing as well as an excuse of the condition may be found in the assumption of the parties to the contract that the promisor . . . would take reasonable, positive action to ascertain its occurrence." J. Murray, *Murray on Contracts* § 187, at 365 (1974). Where a binding receipt is conditioned upon issuance of a policy within a certain time, the proposed insured is justified in assuming that the insurer will exercise reasonable care and diligence in acting upon his application. *De Ford v. New York Life Insurance Co.*, 75 Colo. 146, 224 P. 1049 (1924).

Although not factually on all-fours, the recent Oklahoma case of *Peddicord v. Prudential Insurance Co.*, 498 P.2d 1388 (Okl. 1972) contains language to like effect. There, it was held:

"'* * * We think it may well be held that there was an implied contract if not a legal contract * * * on the part of the insurance company to act on the application within a reasonable time; that is, either to accept the application and issue the policy, or reject the same, so that the applicant could secure insurance elsewhere, . . ..'"

498 P.2d at 1390.

Whether the insurer's delay in issuing the policy in this case was within the bounds of reasonableness is certainly not a question which we can resolve. The record contains some evidence which would seem to indicate that the delay in issuance was unreasonable. Thus, if the policy was issued solely on the basis of the information contained in the application obtained on September 8, a delay of issuance until

November 6 would seem to be unreasonable. This view of the evidence is supported by a letter prepared by the insurer and enclosed with the policy. This letter states that the policy was "issued on the basis of the application you [the insured] recently gave our representative." The letter further states that the policy is of a type "issued only to persons who furnish evidence of insurability, which was supplied with your application."

On the other hand, the insurer contends that the delay in issuance was caused by delays it encountered in obtaining records of the insured's medical history during his military service.

Again, we would observe that a resolution of these conflicting contentions is not for our determination.

 Turning now to insured's argument that there is ambiguity between the provisions of the policy and the binding receipt concerning the effective date of the policy, our case law has long adhered to "the rule of liberal construction in favor of the insured of insurance policies in case of any ambiguity." *New York Life Insurance Co. v. Torrance,* 224 Ala. 614, 617, 141 So. 547, 550 (1932).

However, we see no ambiguity under the language at hand here. The policy provides that, if a binding receipt has been issued, the effective date of the policy is to be determined under the provisions of the binding receipt. The binding receipt provides that its date is to be the effective date of the policy *only if* certain conditions are satisfied. This Court interprets this language to provide that the terms of the binding receipt are to control only if its conditions are met and that otherwise the terms of the policy are controlling.

Under Alabama law, therefore, the effective date of the policy is to be determined by the binding receipt, if the conditions contained therein are met. Based upon the record before us, we believe there

is a question of fact to be resolved on the issue of waiver or estoppel on the part of the insurer insofar as condition 3 of the binding receipt is concerned.

The foregoing states Alabama law on the issues underlying the questions certified.

HEFLIN, C. J., and MERRILL, MADDOX, FAULKNER, JONES, ALMON, SHORES and EMBRY, JJ., concur.