**Kim L. HUME, Administratrix of the Estate of Richard Hume**

v.

**The HERTZ CORPORATION.**

**Richard CLAPPER and Barbara Hellmers, Co-Administrators of the Estate of Greg Allen Clapper**

v.

**The HERTZ CORPORATION.**

**Civ. Nos. H–85–688(AHN), H–85–922(AHN).**

United States District Court, D. Connecticut.

Feb. 14, 1986.

Dale P. Faulkner, Suisman, Shapiro, Wool, Brennan, Gray & Faulkner, New London, Conn., for plaintiff.

John W. Lemega, Halloran, Sage, Phelon & Hagarty, Hartford, Conn., for defendant.

## RULING ON PLAINTIFFS' MOTIONS TO AMEND THEIR COMPLAINTS

NEVAS, District Judge.

These two wrongful death actions were recently consolidated for joint discovery and trial. Fed.R.Civ.P. 42(a). Jurisdiction is based on diversity of citizenship. 28 U.S.C. Section 1332. The plaintiffs now move to amend their complaints under Rule 15(a), Fed.R.Civ.P. They seek to correct insufficiently stated claims and to cite proper statutory authority. In addition, they each seek leave to add a second state law claim to their complaints. The plaintiff Hume seeks to join this action in her individual capacity to allege a separate claim for loss of consortium. The plaintiffs Clapper and Hellmers seek leave to add a claim for double or treble damages. The defendant does not oppose these motions and has not filed any memoranda in opposition. For the reasons that follow, and subject to the conditions more fully discussed below, the motions to amend are granted.

### Facts

The plaintiffs seek to recover damages permitted by Connecticut's wrongful death statute, Conn.Gen.Stat. Section 52–555,[1] for the deaths of the plaintiffs' decedents resulting from a motorcycle and automobile collision in New London, Connecticut on June 16, 1985. In separate but nearly identical complaints, the plaintiffs allege that the lessee of a car owned and leased by the sole defendant, the Hertz Corporation ("Hertz"), negligently and carelessly drove a Hertz car causing a collision with a motorcycle driven by Richard Hume. Greg Clapper was a passenger on the motorcycle. (Hume complaint at paras. 3–7; Clapper and Hellmers complaint at paras. 3–7). As a result of the collision Mr. Hume and Mr. Clapper suffered fatal injuries. (Hume complaint at para. 8; Clapper and Hellmers complaint at para. 8). The plaintiffs are Kim Hume, administratrix of the estate of Richard Hume, and Richard Clapper and Barbara Hellmers, co-administrators of the estate of Greg Allen Clapper.

### Discussion

Rule 15(a), Fed.R.Civ.P., provides that once an answer is served, the court's grant of leave to amend a complaint "shall be freely given when justice so requires." In ruling on a motion to amend, the court's discretion to grant leave is limited where there is "undue delay, bad faith or dilatory motive on the part of the movant," and "undue prejudice to the opposing party ..., [and] futility of amendment...." *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962). *See also Evans v. Syracuse City School District,* 704 F.2d 44, 46 (2d Cir.1983).

---

**1.** Section 52–555, Conn.Gen.Stat., provides that:

In any action surviving to or brought by an executor or administrator for injuries resulting in death, whether instantaneous or otherwise, such executor or administrator may recover from the party legally at fault for such injuries just damages together with the cost of reasonably necessary medical, hospital and nursing services, and including funeral expenses, provided no action shall be brought to recover such damages and disbursements but within two years from the date when the injury is first sustained or discovered or in the exercise of reasonable care should have been discovered, and except that no such action may be brought more than three years from the date of the act or omission complained of.

### a. *The Plaintiff Hume*

Addressing the plaintiff Hume's motion, she first seeks leave to add a paragraph alleging that Richard Hume's injuries were caused by the negligence of Hertz's lessee. (Amended complaint at para. 6). Since Rule 15(a) is often used to add an allegation thereby correcting an insufficiently stated claim, 6 C. Wright & A. Miller, *Federal Practice and Procedure, Civil:* Section 1474 at 379–80 (1971), leave to amend is granted. Hume's second request is to correct an improper citation to Connecticut's statute under which the owner-lessor of a car is liable to the same extent as the operator-lessee would have been liable if the operator had been the owner. Conn. Gen.Stat. Section 14–154a. Leave to properly cite that leasing statute is granted. (Amended complaint at para. 8).

The final request for amendment is to add a new plaintiff alleging a new cause of action. (Amended complaint at second count). Kim Hume, the decedent's wife and the administratrix of the decedent's estate, seeks to join this action as a plaintiff in her individual capacity "to add a related claim for loss of consortium." (Hume's Memorandum in Support at 3). Permissive joinder of plaintiffs under Rule 20(a), Fed.R.Civ.P., has been freely permitted in vehicular collision cases "when one or more of [the plaintiffs] were not present at the scene but suffered some type of injury as a result of the event." 7 C. Wright & A. Miller, *Federal Practice and Procedure, Civil:* Section 1656 at 281 (1972), *citing* cases including *Smith v. Brown,* 17 F.R.D. 39, 40 (M.D.Pa.1955) (where owner and operator of car, who seeks relief for damages including loss of wife's services and companionship, was a proper co-plaintiff in his wife's personal injury action).

Although Kim Hume's joinder poses no barrier to her proffered amendment, the apparent lack of remedy under Connecticut law for a loss of consortium claim in a wrongful death action poses a potentially insurmountable barrier. The Connecticut Supreme Court recognized that either spouse has a loss of consortium claim where the other spouse suffers personal injuries caused by a third party's negligence. *Hopson v. St. Mary's Hospital,* 176 Conn. 485, 496, 408 A.2d 260 (1979), *overruling Marri v. Stamford Street R. Co.,* 84 Conn. 9, 78 A. 582 (1911) (where court denied husband's claim for loss of consortium). However, since *Hopson,* the Connecticut Supreme Court has not decided whether a surviving spouse may recover for the loss of consortium when the other spouse's injuries are fatal.

Whether the law of Connecticut provides Kim Hume a remedy for the loss of her husband's consortium when her husband's injuries are fatal is potentially dispositive of her proffered claim. If Kim Hume's injury is not actionable, then she has no claim to assert. However, if her injury is actionable, then to avoid barring her derivative consortium claim it must be tried before this court with her deceased husband's wrongful death action. *Hopson v. St. Mary's Hospital,* 176 Conn. at 494, 408 A.2d 260.

With no clear, controlling precedent in the Connecticut Supreme Court's decisions on this state law question, this court sitting in diversity must determine what this state's highest court would rule .to be its law. *Reeves v. American Broadcasting Companies, Inc.,* 719 F.2d 602, 605 (2d Cir.1983). Guidance is provided by two federal court decisions in this district denying a loss of consortium claim in a wrongful death action under Connecticut law. *Bauer v. Johns-Manville Corp.,* 599 F.Supp. 33, 36 (D.Conn.1984) (Blumenfeld, J.) (where the court, in dismissing a wife's claim for loss of consortium resulting from her husband's death, did not dismiss that part of her loss of consortium claim caused by the decedent's injuries *before* his death); *Reed v. Pacific Intermountain Express Company,* 597 F.Supp. 42, 45 (D.Conn. 1984) (Zampano, J.).

When confronted with a loss of consortium claim in a wrongful death action, Senior United States District Judge Blumenfeld and Senior United States District

Judge Zampano acknowledged the absence of controlling precedent by Connecticut's highest court. *Bauer v. Johns-Manville Corp.,* 599 F.Supp. at 36; *Reed v. Pacific Intermountain Express Company,* 597 F.Supp. at 43. In the absence of controlling precedent, the senior judges analyzed the existing law and were persuaded that the Connecticut Supreme Court would not permit recovery for loss of consortium in a wrongful death action. *Bauer,* 599 F.Supp. at 36; *Reed,* 597 F.Supp. at 44 (although the court dismissed a claim for loss of consortium, it stated that the rationale underlying an impressive number of superior court decisions permitting a common law claim for loss of consortium "has appeal both in law and in logic."). Were this court to follow these two well-reasoned decisions, the amendment as proffered would fail to state a cause of action under Connecticut law. Leave to amend would be futile and, therefore, should be denied. *S.S. Silberblatt, Inc. v. East Harlem Pilot Block,* 608 F.2d 28, 42 (2d Cir.1979) (no abuse of trial court's discretion to deny leave to amend a complaint that fails to state a cause of action).

To support her proffered amendment, the plaintiff Hume cites two Connecticut Superior Court decisions in which a surviving spouse was permitted to pursue a derivative but separate claim for loss of consortium in her deceased spouse's wrongful death action. *Greca v. Caldarelli,* 11 Conn. Law Trib. No. 29 at 18 (Conn.Super.Ct. Jan. 21, 1985) (where the court held that a loss of consortium claim "is derivative, not of the wrongful death statute, but of the deceased injured spouse's cause of action"); *Hinde v. Butler,* 35 Conn.Supp. 292, 296, 408 A.2d 668 (Super.Ct.1979) (damages for loss of consortium is within meaning of "just damages" under wrongful death statute). The plaintiff plainly overlooks the great unsettlement of Connecticut law regarding her claim.

The uncertainty of whether there is a remedy for loss of consortium under Connecticut's wrongful death statute or based on common law is unequivocally reflected by the decisions of federal courts and lower state courts. Connecticut superior court decisions have held that a spouse cannot recover for loss of consortium under the wrongful death statute. *E.g., Leland v. Chawla,* 39 Conn.Supp. 8, 11, 467 A.2d 439 (Super.Ct.1983); *Demers v. Landry,* 7 Conn.Law Trib. No. 9 at 15 (Conn.Super.Ct. Oct. 31, 1980). *Contra Hinde v. Butler,* 35 Conn.Supp. at 296, 408 A.2d 668. However, numerous state court decisions have held that a spouse can recover for loss of consortium in a wrongful death action where the claim is based on common law. *E.g., Renzi v. Consolidated Rail Corp.,* 10 Conn.Law Trib. No. 15 at 18 (Super.Ct. Dec. 13, 1983); *Panagos v. Wall,* 6 Conn.Law Trib. No. 12 at 11 (Super.Ct. March 3, 1980). The environment of uncertainty surrounding this unresolved state law question is reflected in *Reed v. Pacific Intermountain Express Company,* 597 F.Supp. at 43 (citations to decisions by this district's federal courts and by lower state courts not permitting a loss of consortium claim under Connecticut's wrongful death statute) and at 44 (citations to Connecticut Superior Court decisions permitting an independent common law cause of action for loss of consortium in a wrongful death action). *See generally* Comment, *Wrongful Death and Loss of Consortium in Connecticut,* 14 Conn.L.Rev. 631 (1982).[2]

This court appreciates that its duty and responsibility in a diversity action are to determine and apply the law of the state in which it sits. *Erie R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). The absence of clear, controlling Connecticut Supreme Court precedent on the unresolved state law question does not allow the court to remit the plaintiff to state court. *Meredith v. Winter Haven,* 320 U.S. 228, 234, 64 S.Ct. 7, 11, 88 L.Ed. 9 (1943). Under these circumstances a feder-

---

**2.** An interesting additional indication of the uncertainty concerning a surviving spouse's claim for loss of consortium under Connecticut law is the fact that this question was recently a moot court topic for first year law students at the University of Connecticut School of Law.

al court must generally determine how the state's highest court would decide its law. *Reeves v. American Broadcasting Companies, Inc.,* 719 F.2d at 605; *Marina Management Corp. v. Brewer,* 572 F.2d 43, 46 (2d Cir.), *cert. denied,* 439 U.S. 829, 99 S.Ct. 104, 58 L.Ed.2d 123 (1978). However, a fact not easily overlooked is that this purely state law question is more appropriately answered by this state's highest court, the ultimate authority on state law. *See Erie R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed.2d 1188 (1938).

This court chooses to exercise an option previously unavailable to courts in this district when faced with ruling on significant unresolved Connecticut law questions.[3] This option is Connecticut's newly enacted certification procedure. Public Act No. 85–111.[4]

This court chooses to use the certification procedure in the interest of comity and cooperative judicial federalism. Certification is on the court's own motion, *Elkins v. Moreno,* 435 U.S. 647, 662, 98 S.Ct. 1338, 1347, 55 L.Ed.2d 614 (1978), and within its discretion, *Lehman Brothers v. Schein,* 416 U.S. 386, 391, 94 S.Ct. 1741, 1744, 40 L.Ed.2d 215 (1974). *See generally* 17 C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure, Civil:* Section 4248 at 525–32 (1978 & Supp.1985). Using this state's certification procedure will provide the Connecticut Supreme Court with the opportunity to decide this potentially repetitive question and to promote uniformity in its law. *Barnes v. Atlantic & Pacific Life Insurance Company of America,* 514 F.2d 704, 706 (5th Cir.), *on certification,* 295 Ala. 149, 325 So.2d 143 (1975), *on receipt of answers to certification,* 530 F.2d 98 (5th Cir.1976). Moreover, a timely definitive answer early in these proceedings by the court with the last word on this

---

3. *See Marina Management Corp. v. Brewer,* 572 F.2d 43 (2d Cir.), *cert. denied,* 439 U.S. 829, 99 S.Ct. 104, 58 L.Ed.2d 123 (1978) where the Second Circuit, in affirming a Connecticut district court's determination that the Connecticut Supreme Court would bar an unlicensed real estate broker from recovering a brokerage commission on an aborted sale of a marina, commented that "we are unaware of any State procedure by which we could certify this question to the Connecticut courts." *Id.* at 46. The court further noted that to determine the Connecticut law by interpreting relevant state statutes was not "sufficiently difficult" to warrant certification. *Id.*

4. This Public Act, entitled The Uniform Certification of Questions of Law Act, became effective October 1, 1985. Conn.Gen.Stat. Section 2–32. The Act provides that:

Section 1. The supreme court may answer questions of law certified to it by the Supreme Court of the United States, a Court of Appeals of the United States or a United States District Court when requested by the certifying court if there are involved in any proceeding before it questions of law of this state which may be determinative of the cause then pending in the certifying court and as to which it appears to the certifying court there is no controlling precedent in the decisions of the supreme court of this state.

Sec. 2. This act may be invoked by an order of any of the courts referred to in section 1 of this act upon the court's own motion or upon the motion of any party to the cause.

Sec. 3. A certification order shall set forth: (1) The questions of law to be answered; and (2) [A] statement of all facts relevant to the questions certified and showing fully the nature of the controversy in which the questions arose.

Sec. 4. The certification order shall be prepared by the certifying court, signed by the judge presiding at the hearing, and forwarded to the supreme court by the clerk of the certifying court under its official seal. The supreme court may require the original or copies of all or of any portion of the record before the certifying court to be filed with the certification order, if, in the opinion of the supreme court, the record or portion thereof may be necessary in answering the questions.

Sec. 5. Fees and costs shall be the same as in civil appeals docketed before the supreme court and shall be equally divided between the parties unless otherwise ordered by the certifying court in its order of certification.

Sec. 6. Proceedings in the supreme court shall be those provided in the rules of said court.

Sec. 7. The written opinion of the supreme court stating the law governing the questions certified shall be sent by the clerk under the seal of the supreme court to the certifying court and to the parties.

Sec. 8. This act shall be so construed a⸱ to effectuate its general purpose to make form the law of those states which e⸱

Sec. 9. This act may be cited as form Certification of Questions of

question will "in the long run save time, energy, and resources and helps build a cooperative judicial federalism." *Lehman Brothers v. Schein,* 416 U.S. at 391, 94 S.Ct. at 1744 (footnote omitted).

Certifying unresolved questions to state supreme courts is not uncommon in this circuit.[5] For example, in an action with a protracted appellate history, the Second Circuit ultimately certified a controlling question of Florida law to the Supreme Court of Florida for determination. *Schein v. Chasen,* 478 F.2d 817 (2d Cir.1973), *vacated sub nom. Lehman Brothers v. Schein,* 416 U.S. 386, 94 S.Ct. 1741, 40 L.Ed.2d 215 (1974), *on certification after rem'd,* 313 So.2d 739 (Fla.1975), *aff'g district court after disposition of certified question,* 519 F.2d 453 (2d Cir.1975). Prior to certification, however, a majority for the court of appeals, in *Schein v. Chasen,* 478 F.2d 817 (2d Cir.1973), reversed the trial court dismissing a shareholders' derivative, diversity suit. Judge Kaufman dissented urging the court of appeals to use Florida's "enlightened law" for certification in order to receive a final and authoritative answer. *Id.* at 828–29. The Supreme Court vacated the Second Circuit's judgment, *Lehman Brothers v. Schein,* 416 U.S. 386, 94 S.Ct. 1741, 40 L.Ed.2d 215 (1974), remanding the action for reconsideration of whether, in view of the "novelty of the question" concerning insider trading and the "great unsettlement of Florida law," Florida's certification procedure should be invoked. *Id.* at at 391–92, 94 S.Ct. at 1744. On remand, the Second Circuit followed the Supreme Court's direction certifying the appropriate state law question. *Schein v. Chasen,* 519 F.2d at 454.

More recently, Judge Kaufman, in writing for the Second Circuit, instructed a court in this district to certify unsettled state law questions so that the district court "can obtain definitive and speedier answers to the quandaries" that prompted it to abstain. *Griffin Hospital v. The*

**5.** The Court of Appeals for the Fifth Circuit "has by far the greatest experience with certification." 17 C. Wright, A. Miller & E. Cooper,

*Commission on Hospitals and Health Care,* 782 F.2d 24, 26 (2d Cir.1986).

In view of the foregoing, counsel for the plaintiff Hume and the defendant are directed to jointly prepare, or separately prepare if counsel are unable to agree, a proposed certification order consistent with Public Act 85–111. Counsel should outline (1) the question of whether a surviving spouse may recover for loss of consortium when the other spouse's injuries are fatal and (2) the facts of this case relevant to that unresolved question. *E.g., Ward v. State Farm Mutual Automobile Insurance Co.,* 539 F.2d 1044, 1050 n. 3 (5th Cir.1976). The proposed certification order shall be filed with *this* court by March 20, 1986.

As a final comment, although certification may be more expedient in the long run, delay may be engendered by the certification procedure. *Lehman Brothers v. Schein,* 416 U.S. at 394, 94 S.Ct. at 1745 (Rehnquist, concurring). Since this is a consolidated action, the other plaintiffs, Clapper and Hellmers, may move for a separate trial if the delay becomes unduly prejudicial. Fed.R.Civ.P. 42(b).

b. *The Plaintiffs Clapper and Hellmers*

Turning now to the plaintiffs Clapper and Hellmers' motion to amend, they first seek leave to allege with more particularity previous allegations of Hertz's negligence. Such amendment is permissible, 6 C. Wright & A. Miller, *Federal Practice and Procedure, Civil:* Section 1474 at 380 & n. 97 (1971 & Supp.1985), and, therefore, is granted. *Parsons v. General Motors Corp.,* 85 F.R.D. 724, 726–27 (N.D.Ga. 1980). The second request for amendment incorporates the plaintiffs' earlier still pending motion to amend. This request, like that of the plaintiff Hume's second request, is to correct an improper citation to Connecticut General Statute Section 14–154a. Leave is granted.

*Federal Practice and Procedure, Civil:* Section 4248 at 530 (1978).

The plaintiffs Clapper and Hellmers final request is to add a second claim for double or treble damages as permitted under Connecticut General Statutes Section 14–295.[6] In granting leave to add this second claim, the court is not deciding whether section 14–295 applies to Hertz, but merely finds that at this time the amendment is not obviously futile. *Foman,* 371 U.S. at 182, 83 S.Ct. at 230. *E.g., Gionfriddo v. Avis Rent A Car System, Inc.,* 192 Conn. 280, 472 A.2d 306 (1984) (where liability in a wrongful death action is imposed under Conn.Gen.Stat. Section 14–154a upon owner-lessors of auto for the misconduct of driver-lessee, an award of treble damages under Conn.Gen.Stat. Section 14–295 against lessors is permissible).

Hertz has raised a valid issue concerning the applicability of section 14–295 to this case. (Defendant's motion to amend scheduling order). The Connecticut Legislature's recent enactment of Public Act 85–122 repealed section 14–295 substituting a new statute that exempts lessors of motor vehicles from the double or treble damage provisions for highway use violations.[7]

Hertz has leave to file a motion to dismiss this second claim within thirty days from this date. A motion to dismiss directed at Hertz's potential exposure to double or treble damages under section 14–295 will provide the parties with an opportunity to address whether the new statute was effective and, therefore, applied at the time of the collision, and, if applicable, whether Hertz is exempted from the statute.

Finally, this court finds that these motions were not filed in bad faith or with a dilatory motive, and that to grant them will neither unduly delay the resolution of these actions nor unduly prejudice the defendant.

6. Section 14–295, Conn.Gen.Stat., provides that:
   Each person who, by neglecting to conform to any provision of sections 14–230 to 14–242, inclusive, or section 14–245, or 14–247, causes any injury to the person or property of another, shall be liable to the party injured in double or treble damages if, in the discretion of the court in which any action is pending,

For the foregoing reasons, the motions to file the amended complaints are granted to the extent permitted by this ruling.

double or treble damages are just, with the costs of such action.

7. Public Act 85–122 (the new Conn.Gen.Stat. Section 14–295) is the same as the previous section except for the following additional sentence.
   "The provisions of this section shall not apply to any person licensed under section 14–15."