**SOUTHEASTERN FINANCIAL CORP.,**
**Plaintiff-Appellee,**

v.

**John SMITH, Defendant-Appellant.**

No. 75–3203.

United States Court of Appeals,
Fifth Circuit.

Feb. 17, 1976.

Robert M. Hill, Jr., Florence, Ala., for defendant-appellant.

Philip A. Geddes, Huntsville, Ala., for plaintiff-appellee.

Before WISDOM, BELL and CLARK, Circuit Judges.

PER CURIAM:

This diversity appeal presents important issues of Alabama law which we believe are particularly appropriate for resolution by the Supreme Court of Alabama. Thus, we defer decision in the cause and certify the issues to the Supreme Court of Alabama.

Following our practice, see *West v. Caterpillar Tractor Co., Inc.*, 5 Cir. 1974, 504 F.2d 967, we requested that the parties submit a proposed agreed statement of the case and certificate of issues for decision. The parties have agreed on the statement of the case and the three issues certified.

CERTIFICATE FROM THE UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT TO THE SUPREME COURT OF ALABAMA, PURSUANT TO ARTICLE 6, SEC. 140(b)(3) OF THE ALABAMA STATE CONSTITUTION, AS AMENDED 1973

To the Supreme Court of Alabama and the Honorable Justices thereof:

It appears to the United States Court of Appeals for the Fifth Circuit that this case involves questions or propositions of law of the State of Alabama which are determinative of this cause, and there appears to be no controlling precedents in the decisions of the Supreme Court of Alabama. This Court hereby certifies the following questions of law to the Supreme Court of Alabama for instructions concerning the same, based on the facts related herein pursuant to Article 6, Sec. 140(b)(3) of the Alabama State Constitution, as amended 1973, as follows:

1. *Style of case.*

The style of the case is *Southeastern Financial Corporation, a Corporation, Appellee, vs. John Smith, Appellant,* being Case No. 75–3203, United States Court of Appeals for the Fifth Circuit, an appeal from the United States District Court for the Northern District of Alabama.

2. *Statement of the case.*

Appellee, Southeastern Financial Corporation, ("Southeastern"), instituted this action against Appellant, John Smith ("Smith") for recovery of three worthless checks, together with a reasonable attorney's fee and punitive damages.

Prior to the events underlying this action, Southeastern entered into a factoring agreement with Danube Carpet Mills, Inc., whereby Southeastern received Danube's accounts receivable for collection. The accounts so factored were "without recourse", i. e., Southeastern shouldered the risk of non-collection. In return, Southeastern received from Danube a commission on the account of one per cent (1%) and interest at the rate of two per cent (2%) above the current prime rate.

Carriage House Mobile Homes, Inc. purchased carpet from Danube for use in its manufacture of mobile homes. Carriage House purchased such carpet on open account.

Smith was employed by Carriage House as its dispatcher and was also a stockholder in the corporation. Sometime after his purchase of stock, Smith was approached by Woody Lacy, President of Carriage House, and asked to be Secretary-Treasurer of the corporation and co-signatory on all corporate checks. Smith agreed.

Catherine Thrasher, secretary and bookkeeper for Carriage House prepared

a "daily management report" of the corporation, showing the daily balance in the general corporate checking account. Despite the fact that Smith was furnished with a copy of the report, he rarely relied on it, leaving the daily finances of the corporation to Lacy and Ms. Thrasher. Despite his capacity as an officer, Smith's working office was in a small trailer behind the brick office which housed the other corporate offices.

Smith's co-signatory on the corporate checks was Mr. Lacy. Ms. Thrasher brought the checks out to defendant's office for his signature. At times, he would figure, along with her, the amount the corporation could expect as income from the sale of trailers and thus the amount the corporation would have available to disburse to suppliers. Occasionally he would sign sheets of checks in blank, leaving it to Lacy to make the final decision as to the amount and the payee.

On November 5, 1973, Carriage House established a General Account with First State Bank of Phil Campbell, both Lacy and Smith being co-signatories on the checking account. At the same time, an arrangement was made between the bank and J. H. Porter, at that time the majority stockholder, which had the following effect: Porter established a personal account upon which the bank could draw to cover checks deposited by the corporation which were dishonored by either the drawer or the drawee bank. In this way, checks deposited in the corporation were honored immediately, without the bank's waiting for the checks to clear.

On December 4, 1973, Porter sold his remaining stock in Carriage House and ended his "guarantee" with the bank. Thereafter, Porter continued to assert control of the corporation by continuing to intercept checks destined for the corporation and to direct them to his own use. This action was done to protect his funds against a loss of the funds he had placed in escrow to guarantee the corporate receipts.

In the latter part of November, 1973, the corporation began a rapid decline. Approximately $48,000.00 worth of dealers' checks, payable to the account of Carriage House were dishonored, plus Porter intercepting other dealer checks. During this time, and up until the account went inactive on December 21, 1974, approximately $140,000.00 in checks were drawn against the general account, for which there were inadequate funds to cover them.

During this period, Smith continued to sign checks drawn against the corporate account. While he knew that the daily management reports often indicated a negative balance, he nevertheless thought that the checks coming in from dealers would be adequate to cover the checks issued to suppliers. Smith knew that Porter had sold his stock to Gooch and that Porter was intercepting some of the checks coming in from dealers.

Danube Carpet Mills, and subsequently Southeastern, received three bad checks from Carriage House. The first, Check No. 512 (Plaintiff's Exhibit 3), was in the amount of $3,684.82. It was dated November 27, 1973, and was apparently written to cover goods invoiced from Danube November 5, 1973 (Defendant's Exhibit 3). The second, Check No. 597 (Plaintiff's Exhibit 2), was in the amount of $4,252.54. It was dated December 4, 1973, and was written to cover goods invoiced from Danube on November 15, 1973. The third, Check No. 710 (Plaintiff's Exhibit 1), was in the amount of $5,963.18. It was dated December 11, 1973, and was written in payment of goods invoiced from Danube on November 25, 1973 (Defendant's Exhibit 5), and on November 30, 1973. Each of the three checks was presented for payment to the drawee bank at undetermined times in December, and each was refused.

On January 1, 1974, the total stock of the corporation was transferred to one Chuck Jackson. Mr. Smith was to receive a consideration of $4,500.00 for his shares; however, this was never paid. The sale was negotiated by Gooch, who

arranged for Jackson to purchase the entire interest in Carriage House.

### 3. CONCLUSIONS OF LAW.

The defendant, Smith, knew or should have known the financial condition of Carriage House. After the date of December 1, 1973, any expectation of payment of said corporate checks on the part of Smith was unreasonable as a matter of law. The defendant, Smith, was not guilty of active fraud and was not a participant in any knowing scheme to defraud Danube or Southeastern. His conduct amounted to a willful omission to act or gross and willful misfeasance.

### 4. QUESTIONS TO BE CERTIFIED.

1. Under the provisions of Title 7, Section 131(1), Code of Alabama 1940, as amended, does willful misfeasance or willful omission to act amount to an "unlawful" utterance?

2. Would payment of an antecedent debt sustain a cause of action under the provisions of Title 7, Section 131(1), Code of Alabama 1940, as amended?

3. To recover under the provisions of Title 7, Section 131(1), Code of Alabama 1940, as amended, must plaintiff show detrimental reliance, injury or damage as a result of the action?