The CINCINNATI INSURANCE CO.,
Plaintiff-Appellant,

v.

The CITY OF TALLADEGA,
ALABAMA, et al.,
Defendants-Appellees.

No. 74-1149.

United States Court of Appeals,
Fifth Circuit.

March 31, 1976.

James E. Clark, Birmingham, Ala., for plaintiff-appellant.

Robert B. Propst, Anniston, Ala., for Acker Elec.

N. Lee Cooper, Birmingham, Ala., for Bodine, Byrson and Rolling.

Harold P. Knight, Birmingham, Ala., for Crawford Door Sales.

Byron D. Boyett, Talladega, Ala., for Dyson Const., Helm Elec. and Talladega Hardware Co.

Robert W. Weaver, Talladega, Ala., for Hayes Plumbing.

David E. Hicks, Birmingham, Ala., for Independent Elevator.

John H. Morrow, Birmingham, Ala., for Naughton Equip. Co. and Schwab Safe Co.

J. R. Forman, Jr., Birmingham, Ala., for Republic Steel Corp.

Hank Fannin, Talladega, Ala., for Wilcox Roofing Co.

William G. Somerville, Jr., Birmingham, Ala., for City of Talladega.

Robert B. Stewart, Montgomery, Ala., for Pitman Bros.

Philip T. Shanks, Jr., Decatur, Ala., for Decatur Iron & Steel and others.

C. G. Ball, Lafayette, Ind., Charles L. Howard, Jr., Birmingham, Ala., for Aecco.

Otis R. Burton, Jr., Talladega, Ala., for John D. Hill, Standard Tile Co.

Thomas Seay, Birmingham, Ala., J. N. Montgomery, Stringer & Montgomery, Talladega, Ala., for Hare Const. Co.

Charles L. Denaburg, Birmingham, Ala., for Acousti.

Harold T. Ackerman, Birmingham, Ala., for Lucas.

Before AINSWORTH, GODBOLD and SIMPSON, Circuit Judges.

GODBOLD, Circuit Judge:

This appeal presents questions of Alabama law appropriate for resolution by the courts of that state. We certify these questions to the Alabama Supreme

Court under the recently adopted certification provision of the Alabama constitution.[1]

The Supreme Court of Alabama is, of course, free to fully consider all matters set forth in the appendix, briefs,[2] and, if the court so desires, oral argument. The certification is not intended to be an exclusive or exhaustive statement of the case. Furthermore, this court's formulation of the facts and issues is not intended to dictate the response of the Supreme Court of Alabama. The response to these legal questions should be determined by the law of Alabama, and the Supreme Court should not feel itself limited in its response by the specific language employed in the certification.

CERTIFICATE FROM THE UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT TO THE SUPREME COURT OF ALABAMA, PURSUANT TO ARTICLE 6, § 140(b)(3) OF THE ALABAMA STATE CONSTITUTION, AS AMENDED 1973

To The Supreme Court of Alabama and the Honorable Justices thereof:

It appears to the United States Court of Appeals for the Fifth Circuit that this case involves questions or propositions of the law of the State of Alabama which are determinative of the cause, and there appear to be no clear controlling precedents in the decisions of the Supreme Court of Alabama. It also appears to this court that the questions are of significant importance to writers of surety bonds in Alabama and to obligees thereunder. This court hereby certifies the following questions of law to the Supreme Court of Alabama for instructions concerning the same, based on the facts recited herein, pursuant to Article 6, § 140(b)(3) of the Alabama State Constitution, as amended 1973, as follows:

1. *Style of the case.*

The style of the case is *The Cincinnati Insurance Company*, Plaintiff-Appellant, v. *The City of Talladega, Alabama, et al.,** Defendants-Appellees, No. 74–1149, United States Court of Appeals for the Fifth Circuit, an appeal from the United States District Court for the Northern District of Alabama.

2. *Statement of the case.*

In January 1968 the Cincinnati Insurance Company [CIC], an Ohio corporation, appointed John R. Lucas to be an agent for it in Alabama. As required by statute (Code of Ala., Title 28, §§ 66, 85(20)–(38), and 86), Lucas obtained a license from the state Superintendent of Insurance authorizing him to act as agent for CIC in Alabama. This license was issued pursuant to applications submitted by both Lucas and CIC's vice-president. It authorized Lucas to represent CIC in the writing of several classes of insurance, including fidelity and surety. The applications and license set forth no limitations on the powers of Lucas to represent CIC in the writing of insurance in the named classes.

For the purposes of the writing of fidelity and surety bonds, Lucas received from CIC a "bond kit" which consisted of a number of gummed gold corporate seals of CIC and a supply of undated power of attorney forms presigned by CIC'S vice-president. These power of attorney forms stated that Lucas was appointed CIC's attorney-in-fact to execute for CIC "any and all bonds, policies, undertakings, or other like instruments . . . up to $150,000.00".

CIC and Lucas also executed a written agency agreement, dated January 25, 1968, which recited that "the company

1. Alabama Constitution Art. 6, § 140(b)(3).

2. The briefs submitted to us appear to be inadequate as to the statute of frauds issue, the first question certified, *infra*. The Alabama Supreme Court may well desire additional briefing by the parties as to this question.

* The other defendants-appellees include the prime contractor for construction of the Talladega Municipal Building, thirteen subcontractors and suppliers of material to the project, and the architect.

[CIC] hereby grants authority to Agent [Lucas] to receive and accept proposals for such contracts of insurance covering risks of property and casualty insurance located in the State of Alabama as the Company has authority lawfully to make, subject, however, to restrictions placed upon such Agent by the laws of the state or states in which such Agent is authorized to write insurance business," and that the "Agent has full power and authority to receive and accept proposals for insurance covering such classes of risks as the Company may, from time to time, authorize to be issued." The terms and provisions of the Agency Agreement were not shown to have been made known to defendants.

In October 1966 the City of Talladega engaged Philip Kessler to perform architectural services in connection with proposed construction of a public building, and to perform for the work "customary, ample and sufficient services pursuant to the construction thereof, including supervision and contract control."

The Talladega City Commission received bids for the project and Edwin W. Hare, doing business as Hare Construction Company, was the low bidder with a bid of $487,709. To meet the requirements of Title 50, § 16, Hare was required to supply a performance bond in the amount of $487,709, and a labor and material bond in the amount of $243,854.50. Hare contacted Lucas for the writing of the bonds, and in turn Lucas contacted CIC requesting authority to execute the bonds in CIC's behalf as surety. CIC explicitly refused to grant Lucas this authority, but no officers or employees of the City of Talladega had knowledge of such refusal.

On April 16, 1968, Kessler delivered to the City Commission the contract documents for construction of the building by Hare. Included were the performance bond and payment bond, each dated April 2, 1968, and each executed on behalf of CIC with the signature of Lucas.** Each bore a gold certificate seal of CIC. Attached to each was a photo-copied power of attorney certificate purporting to authorize Lucas to enter into surety bond obligations on behalf of CIC up to a maximum amount of $750,000. The power of attorney forms were dated and initialed by Lucas.

CIC at no time issued power of attorney forms to Lucas which authorized him to enter into surety bonds for an amount greater than $150,000. The officers and employees of the City of Talladega had no knowledge or notice of this limitation.

The parties are in dispute as to whether the City of Talladega, by and through its officers and employees, or Kessler, its Architect, had any knowledge as to whether or not Lucas was an agent of CIC, duly licensed as such by the State of Alabama, and had any knowledge as to whether Lucas had executed the Agency Agreement with CIC dated January 25, 1968, aforementioned. Kessler did ascertain CIC was licensed to do business in Alabama but made no inquiry as to whom its agents were.

After receiving an invoice from Lucas Insurance Agency for the performance and payment bonds, Hare delivered to that agency a premium payment in the form of a check dated April 19, 1968, in the amount of $9,754.18, which was deposited by Lucas in the bank account of the Lucas Insurance Agency. The invoice was signed by Lucas and marked paid on "4/23/68". These funds received by Lucas were never forwarded to CIC or returned to Hare or the City of Talladega.

On April 16, 1968, the City Commission accepted the bonds and work commenced on the building April 26, 1968.

On June 18, 1968, the state representative of CIC discovered that bonds naming CIC as surety were being used in the Talladega project. At that time, approximately 10% of the construction had been completed. On June 26, 1968, CIC filed a declaratory judgment action in federal district court seeking to have the bonds declared invalid and unenforceable.

** A jury found, on special verdicts under Rule 49(a) of the Federal Rules of Civil Procedure, that Lucas signed the performance bond and the payment bond.

In April 1969 Hare defaulted in performance of the construction contract. The city arranged for construction to be completed by other means at an expense of $103,995.56 in excess of the monies left for performance of Hare's contract when default occurred.

On September 15, 1969, the complaint was amended to add as parties defendant all unpaid materialmen and subcontractors of the prime contractor, Hare. In addition to counterclaims against CIC, each of the materialmen and subcontractors filed crossclaims against Talladega for recovery from the city, in the event the bonds were declared invalid and unenforceable, for failure to obtain a bond for the protection of materialmen as required by Title 50, § 16, Code of Ala. When CIC declined to defend these crossclaims under the payment bond, Talladega was required to assume their defense. Talladega's motions to dismiss the crossclaims were overruled in April 1970, and answers were filed by Talladega. The crossclaims then lay dormant pending trial of the preliminary issue of whether the bonds were valid and enforceable.

At trial in May, 1971, the District Court submitted to a jury special verdicts pursuant to Rule 49(a) of the Federal Rules of Civil Procedure. Using the special verdicts of the jury, the District Court entered interlocutory findings of fact and conclusions of law.

The District Court found the surety bonds valid and enforceable against CIC. To the sum of $103,995.56 the Court added $24,243.41 as interest due Talladega on its claim. In addition thereto, the Court found laborers and materialmen to be due the sum of $59,093.97 on their unpaid bills, plus interest and attorneys fees thereon totalling $34,798.56. The Court has also awarded $40,000.00 in attorneys fees to Talladega for its costs of litigation.

3. *Questions to be certified.*

1. Are the surety bonds void because of failure to comply with the statute of frauds, Tit. 20, § 3, Code of Ala.?

2. If the surety bonds are not void, are they enforceable against CIC?

3. If the bonds are valid and enforceable, is Talladega entitled to an award of attorney fees with respect to either or both bonds?

The entire record in this case, together with copies of the briefs of the parties and certification in this court, are transmitted herewith. We respectfully suggest that the Supreme Court may wish to consider requiring the parties to file additional briefs.