**UNITED STATES of America, Plaintiff-Appellee,**

v.

**16.33 ACRES OF LAND IN the COUNTY OF DADE, STATE OF FLORIDA, and Sterling Investments, Inc., et al., Defendants-Appellants.**

**UNITED STATES of America, Plaintiff-Appellee,**

v.

**156.65 ACRES OF LAND IN the COUNTY OF DADE, STATE OF FLORIDA,**

**and**

**Sterling Investments, Inc., et al., Defendants-Appellants.**

Nos. 75–3051, 76–1464
Summary Calendar.*

United States Court of Appeals,
Fifth Circuit.

Aug. 18, 1976.

Robyn Greene, Rollo E. Karkeet, Miami, Fla., for defendants-appellants.

Robert W. Rust, U. S. Atty., Miami, Fla., Peter R. Taft, Asst. Atty. Gen., Joseph A. Pavone, Wallace H. Johnson, Jacques B. Gelin, Eva R. Datz, Dept. of Justice, Washington, D. C., Arnold M. Weiner, Dept. of Justice, Miami, Fla., for plaintiff-appellee.

William C. Martin, Coral Gables, Fla., Leon D. Black, Jr., Joseph S. Paglino, Miami, Fla., for other interested parties.

* Rule 18, 5 Cir.; see *Isbell Enterprises, Inc. v. Citizens Casualty Company of New York, et al.,* 5 Cir., 1970, 431 F.2d 409, Part I.

Before BROWN, Chief Judge, GEWIN and MORGAN, Circuit Judges.

JOHN R. BROWN, Chief Judge:

These appeals[1] present varied and complex issues of Florida case law and statutory construction which are particularly appropriate for resolution by the Florida Supreme Court. They demonstrate the utility of this marvelous device of certification[2] in something other than the run-of-the-mill diversity case, for here the federal question on condemnation turns largely on state law. Stated in general terms, the threshold question, from which a series of others emanate, is whether Sterling's predecessor in title, Miami Bank and Trust Company, retained a reversionary interest in avenues, roads and boulevards which it dedicated to "the perpetual use of the public for proper purposes."

We defer decision on the questions presented and certify them to the Supreme Court of Florida. We will decide such other issues as may remain after decision of the Florida Court.[3]

Following our practice, we requested that the parties submit a proposed agreed certificate of the issues for decision. They have reached substantial agreement upon them,[4] but they disagree as to the wording in Question 8. Since the selection of the proper form of this question may depend upon application of uncertain Florida law, we submit the question in alternative form. We hereby submit the parties' statement of facts and issues, disclaiming, however, any intention or desire that the Supreme Court of Florida confine its reply to the precise form or scope of the questions certified. *See Nardone v. Reynolds, supra,* at 664 n. 7; *Allen v. Estate of Carman, supra,* at 1277; *Martinez v. Rodriquez,* 5 Cir., 1968, 394 F.2d 156, 159 n. 6; *Hopkins v. Lockheed Aircraft Corp.,* 5 Cir., 1966, 358 F.2d 347, 349 n. 2. *See also Cincinnati Ins. Co. v. City of Talladega, supra,* at 719; *Barnes v. Atlantic & Pacific Life Ins. Co., supra,* at 709 n. 10.

CERTIFICATE FROM THE UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT TO THE SUPREME COURT OF FLORIDA, PURSUANT TO SECTION 25.031, FLORIDA STATUTES 1975, AND RULE 4.61, FLORIDA APPELLATE RULES.

TO THE SUPREME COURT OF FLORIDA AND THE HONORABLE JUSTICES THEREOF:

It appears to the United States Court of Appeals for the Fifth Circuit that the above styled case in this Court involves questions or propositions of law of the State of Florida which are determinative of the cause, and there appear to be no clear, controlling precedents in the decisions of the Supreme Court of Florida.

This Court hereby certifies the following questions of law to the Supreme Court of

---

1. By order of March 30, 1976 this Court granted the joint motion of the parties to consolidate the appeal in cause No. 76–1464 with cause No. 75–3051 and to allow the appeal in cause No. 76–1464 to proceed on the briefs and appendix filed in cause No. 75–3051.

2. We have not been slow to take advantage of this procedure. *See Cincinnati Ins. Co. v. City of Talladega,* 5 Cir., 1976, 529 F.2d 718; *ITT Rayonier, Inc. v. Wadsworth,* 5 Cir., 1976, 528 F.2d 1033; *Southeastern Financial Corp. v. Smith,* 5 Cir., 1976, 526 F.2d 1233; *Tyler v. Insurance Co. of North America, Inc.,* 5 Cir., 1975, 520 F.2d 341; *Barnes v. Atlantic & Pacific Life Ins. Co.,* 5 Cir., 1975, 514 F.2d 704, on certification, 1975, 295 Ala. 149, 325 So.2d 143, on receipt of answers to certification, 5 Cir., 1976, 530 F.2d 98; *H. S. Equities, Inc. v. Hartford Accident & Indemnity Co.,* 5 Cir., 1975, 512 F.2d 1277; *Nardone v. Reynolds,* 5 Cir.,

1975, 508 F.2d 660, on certification, Fla., 1976, 333 So.2d 25; and cases cited in *Nardone v. Reynolds, supra,* at 663 n. 6; in *Coastal Petroleum v. Secretary of Army,* 5 Cir., 1973, 489 F.2d 777, 779 n. 5, on rehearing, 1974, 491 F.2d 973; and in *Allen v. Estate of Carman,* 5 Cir., 1971, 446 F.2d 1276, 1277 n. 1.

3. One issue which *may* remain is whether the Summary Declaratory Judgment of the Florida Circuit Court concerning the issue of the discontinuance by law of the public easement is res judicata in this case.

4. The parties stipulated that the question proposed by the Court: "Does a dedication of land to the use of the public convey only an easement to the public, fee simple interest in the land remaining in the grantor?" should be answered in the affirmative.

Florida for instructions concerning said questions of law, based on the facts recited herein, pursuant to Section 25.031, Florida Statutes 1975, F.S.A., and Rule 4.61, Florida Appellate Rules, as follows:

(1) *Styles of the Cases*:

The styles of the consolidated cases in which this certificate is made are United States of America, plaintiff-appellee, versus 16.33 Acres of Land in the County of Dade, State of Florida, and Sterling Investments, Inc., et al., defendants-appellants, Case No. 75–0351; and United States of America, plaintiff-appellee, versus 156.65 Acres of Land in the County of Dade, State of Florida, and Sterling Investments, Inc., et al., defendants-appellants, Case No. 76–1464; such cases being appeals from the United States District Court for the Southern District of Florida.

(2) *Statement of Facts*:

*Introduction.*—This action was begun by a complaint filed by the United States to condemn certain real estate in the Elliott Shores Subdivision on Elliott Key, in Dade County, Florida. The record title holders of the subdivision lots were designated as the defendant-landowners. Sterling Investments, Inc. (Sterling), as successor-in-interest to the original developer, filed an answer alleging that it is the fee simple owner of all the avenues, roads and boulevards as shown on the plat of the subdivision (R. 298).

The District Court, by its order of June 2, 1975, disallowed Sterling's claim, holding, *inter alia*, that the conveyances by the original developer of "the lots abutting the streets and roads by reference to the plat carried title to the center of the abutting roadway subject to the rights in favor of the public all in accordance with the law of the State of Florida" (R. 627). Sterling appealed to the United States Court of Appeals for the Fifth Circuit. The Fifth Circuit determined that issues of state law may be dispositive of this case and ordered that it be certified to the Supreme Court of the State of Florida.

A. *Background.*—The Biscayne National Monument was authorized October 18, 1968, and formally established June 12, 1970, 82 Stat. 1188 (R. 477). The United States instituted four proceedings to acquire the land needed for the establishment of the Biscayne National Monument:

| Style of Lawsuit | Date Complaint Filed | Date Notice of Lis Pendens Filed |
|---|---|---|
| United States v. 95,064 acres of land, No. 70–477-Civ-CF [5] | 4/8/70 | 4/13/70 (O.R. 6821, p. 232) |
| United States v. 338.87 acres of land, No. 72–1311-Civ-CF [6] | 8/18/72 | 8/31/72 (O.R. 7872, p. 126) and amended 11/8/72 (O.R. 7970, p. 773) |
| United States v. 16.33 acres of land, No. 72–1509-Civ-CF [7] | 9/20/72 | 9/22/72 (O.R. 7904, p. 137) and amended 12/17/72 (O.R. 8041, p. 52) |
| United States v. 156.65 acres of land, No. 72–1548-Civ-CF [7] | 9/28/72 | 9/29/72 (O.R. 7915, p. 413) |

**5.** This was a proceeding against the State of Florida to condemn its interest in the project area.

**6.** This was a proceeding to condemn land on Old Rhodes, Totten, Rubicon and Elliott Keys.

**7.** The instant proceedings.

B. Elliott Key is an island approximately eight miles long. Elliott Shores subdivision is approximately two miles north of the southern tip of Elliott Key. The subdivision is approximately one-third of a mile wide and extends from the Atlantic Ocean to Biscayne Bay.

C. Elliott Key has never been connected to the mainland of Florida and is accessible only by boat. The terrain consists of jagged coral rock covered with an almost impenetrable growth of salt water vegetation. The ocean shoreline is land and rock, and the bay shoreline is mangrove fringe. The island has no public utilities. There are no roads capable of vehicular use. A footpath, wide enough for a hiker or two, has been hacked through the vegetation, and periodic attempts are made to keep it open.

D. There is no evidence that Elliott Shores has ever been surveyed, cleared, or even staked. It is uninhabited. Elliott Key itself has a small municipal marina with no overnight facilities. The island attracts fishermen, boaters, nature hikers, and other recreational users interested in exploring undeveloped, virgin land (M. 2).

E. In 1926, Miami Bank, STERLING'S predecessor in title, recorded a plat of the property. The entire subdivision has been sold and resold from the plat as recorded in the Public Records of Dade County, Florida, in Plat Book 23, on page 24, as it has been impossible for anyone to determine visually the location of any of the lots or roads (R. 625, M. 3).

The plat filed by Miami Bank states (R. 626):

That all avenues, roads and boulevards as shown on said plat attached are hereby dedicated to the perpetual use of the public for proper purposes reserving to ourselves, our heirs, administrators, executors, or assigns, the reversion or reversions thereof if ever discontinued by law.

The plat goes on to state (R. 444):

[E]very conveyance of any real estate in this subdivision which may be made hereafter shall be subject to the following restrictions:

1. All lots shall be restricted to residential purposes only with the following exceptions * * * which shall be designated as business lots. This restriction shall not operate against the erection in the subdivision of apartment houses or hotels.

2. All buildings in said subdivision shall be of fire resisting materials * *.

3. No residence shall be erected at a less cost than Three Thousand Dollars * * *.

4. No building shall be erected on a business lot at a less cost than One Hundred Dollars * * * per story for each front foot of the lot * * *.

5. No residence * * * shall be constructed * * * closer than Fifty * * * feet to the centre line of the adjacent street * * *.

6. No garage * * * shall be used for residential purposes * * *.

7. A septic tank * * * shall be put on the * * * property * * *.

8. No spirituous or intoxicating liquor shall be manufactured, bartered or sold in * * * said subdivision * * *.

9. No livestock shall be kept * * * in said subdivision * * *.

10. No unlawful or immoral use shall be made of the premises * * * nor shall any interest therein be sold * * to any person other than of the Caucasian race * * *.

11. The privilege is hereby reserved to the said first party, its successors or assigns to erect and maintain electric and telephone poles, and suitable equipment for any other utilities and to lay water mains on or in the rear five feet of the land hereby conveyed, or on or in the three foot strip along the side line thereof, when necessary, to gain access to the five foot strip reserved along the rear lines of lots * * * for utility purpose and for such purposes as well as to repair, remove or replace said poles, equipment and mains, the said first party shall have the right for itself, its agents and employees to enter upon said premises in

reasonable manner and at reasonable times.

F. In 1960, the dedication in the plat was accepted by Dade County by a blanket resolution which accepted all previously unaccepted dedications in the county (R. 326–327). All of the tracts abutting the roads except for Tract 478 were the subject matter of tax deeds issued by the State of Florida through the Trustees of the Internal Improvement Trust Fund in or before 1944.

G. All conveyances of the lots in the subdivision were made by deeds which contained specific references to the plat (R. 627). No deed contained language showing an intent contrary to that evidenced by the plat. None of the conveyances made express reference to the fee title to the roads.

H. On February 25, 1972 (R. 488, 764), Dade County conveyed all of its interest on Elliott Key to the United States. This condemnation proceeding was instituted on September 20, 1972, and a notice of *lis pendens* was filed September 22, 1972.

I. Sterling traces its title to a quitclaim deed by the original subdivider dated March 3, 1959, to one J. A. Bechard, conveying unspecified tracts in Dade, Broward and Monroe Counties (R. 341, 328, 350–351, 511). Following mesne conveyances, the reversionary interest in the avenues, alleys, roads and boulevards in the Elliott Shores Subdivision was deeded to Sterling on August 16, 1972 (R. 341). There are no tax deeds in Sterling's chain of title.

J. In November 1972, Sterling instituted an action in the Circuit Court of the Eleventh Judicial Circuit in and for Dade County, Florida, to quiet title to the avenues, roads and boulevards in the Elliott Shores Subdivision (R. 453, 318). Dade County, the only named party defendant, disclaimed any ownership interest in the land (R. 485). Thereafter on January 24, 1973, the Florida court issued a judgment quieting title in Sterling (R. 505). The Florida court also found that "the dedication of all avenues, roads and boulevards to the perpetual use of the public for proper purposes has been discontinued by law and the use thereof reverts to the fee owners" (R. 505, J.A. 145).

K. *Summary of proceedings before the district court.*—No. 72–1509–Civ–CF was instituted by the United States by a complaint filed on September 20, 1972 (R. 1–2), and amended on November 6, 1972 (R. 119), February 21, 1973 (R. 125, 179), April 13, 1973 (R. 225), and November 23, 1973 (R. 275), to condemn various lots in the Elliott Shores Subdivision on Elliott Key, including the fee to the road rights of way abutting the lots (up to the center line) but subject to "existing easements for public roads and highways, public utilities, railroads and pipelines, and free and clear of all encumbrances or liens." The property was acquired for inclusion in the Biscayne National Monument.

L. By motion, the United States asked the court to determine the ownership of the roads and boulevards in the Elliott Shores Subdivision.

M. The federal district court found that there was nothing in the original plat and the subsequent deeds of conveyance to show an intention on the part of the original subdivider to retain a fee interest in the streets and roads. The court held that the conveyances of the lots by reference to the plat carried title to the center of the abutting roadway subject to an easement in favor of the public (R. 627).

N. In addition, the district court held that, to the extent that the lot owners' chain of title showed tax deeds, these deeds would have extinguished the original subdivider's reversion, even assuming such a reversion had been retained.

O. Finally, the district court held that the establishment of the national monument did not effect a discontinuance of the public use of the road rights of way (R. 627–628).

P. As regards the interest of the lot owners, final judgments have been entered and payments have been made to them. All of the judgments were entered pursuant to settlement.

(3) *Questions of Law :*

1.  Did Sterling's predecessor in title, Miami Bank and Trust Company, intend to convey its fee interest in the roads to the abutting landowners when it filed a plat containing a public dedication of the roads in Elliott Shores?

2.  Is the evidence that Miami Bank and Trust Company intended to reserve a reversionary interest in the roads sufficient to overcome the rule of construction that a conveyance of a lot abutting a road passes a fee interest extending to the center of the road?

3.  Was the acceptance of the 1926 dedication by Dade County in 1960 timely enough to be effective to complete the dedication?

4.  If Miami Bank and Trust Company did retain a reversionary interest in the roads, has the dedication of the roads to the use of the public for proper purposes been "discontinued by law," by

(a) the condemnation itself, or

(b) the conveyance of Dade County's interest in the land to the federal government, or

(c) the disclaimer by Dade County of any interest in the roads in state court proceedings?  Fla.Stat.Ann. § 336.12.

5.  (a) If Miami Bank and Trust Company did retain a reversionary interest in the roads, did Sterling comply with Fla.Stat. Ann. § 177.085(2) to preserve its reversionary interest?

(b) If the answer to Question 5(a) is negative, is Fla.Stat.Ann. § 177.085(2) constitutional?

6.  If Miami Bank and Trust Company did retain a reversionary interest in the roads, does the presence of tax deeds in all but one of the abutting lot owners' chains of title terminate Sterling's reversionary interest?  Fla.Stat.Ann. § 197.530(3), § 197.-281(3).

7.  (a) If Miami Bank and Trust Company did retain a reversionary interest in the roads, do the abutting lot owners in fact have a compensable interest in the roads to assert?

(b) Did the lot owners' failure to lay out or use the streets and roads as shown on the subdivision plat constitute an abandonment of their access rights over such roads?

8.  The parties are unable to agree as to the form of this question.  Accordingly, this question is set forth in the alternative forms proposed by appellants and by appellee:

*Question 8 as proposed by Appellants :* If the dedication to the public has been revoked, do the lot owners and their successors retain a compensable interest in the right of way?

*Question 8 as proposed by Appellee :* If the dedication to the public has been revoked, do the lot owners and their successors retain an easement in the right of way?

9.  If the answer to the preceding question is in the affirmative, does Sterling have a compensable interest in the roads?

The entire record in this case, together with copies of the briefs of the parties and agreed certification in this Court, are transmitted herewith.