NATIONAL EDUCATION ASSOCIA-
TION, INC., et al., Plaintiffs-
Appellees,

v.

LEE COUNTY BOARD OF PUBLIC IN-
STRUCTION et al., Defendants-
Appellants.

No. 28195.

United States Court of Appeals,
Fifth Circuit.

Aug. 25, 1972.

Julian D. Clarkson, Emmet B. Anderson, Fort Myers, Fla., for defendants-appellants.

Richard H. Frank, Tampa, Fla., Robert H. Chanin, Washington, D. C., for plaintiffs-appellees.

Before JOHN R. BROWN, Chief Judge, and COLEMAN and CLARK, Circuit Judges.

JOHN R. BROWN, Chief Judge:

Having previously certified this case to the Supreme Court of Florida for an authoritative resolution of perplexingly difficult State law issues, we can now conclude with absolute assurance that despite a commendable effort the District Court incorrectly decided them. Since we are also convinced that the circumstances revealed by this record

present no problem of Federal constitutional proportions, we reverse.

The context of the controversy has already been exhaustively considered in the District Court's opinion,[1] in our own prior opinion certifying the case,[2] and in the opinion of the Supreme Court of Florida answering our certification.[3] Generally stated, the question is whether the Board of Public Instruction of Lee County, Florida may require individual payments of $100 as a condition for the reemployment with tenure of 425 public school teachers who had voluntarily submitted simultaneous mass resignations as a result of their disagreement with the State's educational policies. Deciding that the unilateral imposition of such a requirement violated both Florida law and the due process clause of the Fourteenth Amendment, the District Court granted the teachers' motion for summary judgment, directed the repayment of $100 to those teachers who had complied with the Board's demand, and ordered the reinstatement with back pay of those teachers who had not been rehired because of their refusal to comply.

In a lengthy post-certification memorandum the teachers have strenuously argued that for a variety of reasons we should now reconsider the determination by the Supreme Court of Florida that the Board's action was authorized by State law. We unconditionally decline the invitation. The highly commendable objective of the Florida certification procedure, which we have frequently employed with great success in the past,[4] is to provide this Court with indisputable authority for deciding difficult and previously unresolved issues of State law, thereby minimizing or eliminating entirely the confusion, uncertainty and juridical friction inherent in a system of Federalism that frequently forces Federal Judges to assume—often with extreme reluctance—a decisional role that properly belongs to their brethren on the State bench. Adopting such a course, when it is available to us, involves neither abstention nor an abdication of our constitutionally imposed duty to decide cases properly before us for review.[5] It is simply a relatively expeditious way to substitute informed judgment for informed guesses, desirable because of our fundamental conviction that there is no particular virtue in deciding uncertain issues of State law quickly but incorrectly. The consistently prompt and well considered answers which our certified questions have thus far evoked merely reinforce that conviction.

In retrospect the wisdom of certification in the present case is ap-

1. M.D.Fla., 1969, 299 F.Supp. 834.

2. 5 Cir., 1971, 448 F.2d 451.

3. Fla.S.Ct., 1972, 260 So.2d 206.

4. E. g., Oliva v. Touchton, 5 Cir., 1971, 448 F.2d 437; Gordon v. John Deere Co., 5 Cir., 1971, 451 F.2d 234; Allen v. Estate of Carman, 5 Cir., 1971, 446 F.2d 1276; Boyd v. Bowman, 5 Cir., 1971, 443 F.2d 848; Martinez v. Rodriquez, 5 Cir., 1968, 394 F.2d 156, on certification, Fla., 1968, 215 So.2d 305, on receipt of answers to certification, 5 Cir., 1969, 410 F.2d 729; Life Ins. Co. of Va. v. Shifflet, 5 Cir., 1967, 370 F.2d 555, on certification, Fla., 1967, 201 So.2d 715, on receipt of answers to certification, 5 Cir., 1967, 380 F.2d 375; Hopkins v. Lockheed Aircraft Corp., 5 Cir., 1966, 358 F.2d 347, on certification, Fla., 1967, 201 So.2d 743, on receipt of answers to certification, 5 Cir., 1968, 394 F.2d 656; Green v. American Tobacco Co., 5 Cir., 1962, 304 F.2d 70, on rehearing, 304 F.2d 85, on certification, Fla., 1963, 154 So.2d 169, on receipt of answers to certification, 5 Cir., 1963, 325 F.2d 673, cert. denied, 1964, 377 U.S. 943, 84 S.Ct. 1349, 12 L.Ed.2d 306, on appeal after retrial, 391 F.2d 97, rehearing en banc reversed 1969, 409 F.2d 1166; Clay v. Sun Ins. Office, Ltd., 1960, 363 U.S. 207, 80 S.Ct. 1222, 4 L.Ed.2d 1170, on certification upon remand, Fla., 1961, 133 So.2d 735, on receipt of answers to certification, 5 Cir., 1963, 319 F.2d 505, reversed, 1964, 377 U.S. 179, 84 S.Ct. 1197, 12 L.Ed.2d 229. See W.S. Ranch Co. v. Kaiser Steel Corp., 10 Cir., 1968, 388 F.2d 257, 265 (dissenting opinion), reversed, 391 U.S. 593, 88 S.Ct. 1753, 20 L.Ed.2d 835.

5. Perhaps not all commentators would agree. See Agata, Delaney, Diversity, and Delay: Abstention or Abdication? 4 Hou.L.Rev. 422 (1966).

parent. A distinguished Florida-trained United States District Judge, following extensive consideration of the State claims in a carefully reasoned opinion, concluded that the Board's exaction of a $100-per-teacher payment as a condition of reemployment violated Florida constitutional and statutory law. The Supreme Court of Florida, having before it the briefs and entire record filed in this Court and deciding the question on the basis of precisely the facts that were before us, reached the opposite conclusion and held that "the substance of the accord did not violate the public policy or the laws of Florida." 260 So.2d at 210. That determination must necessarily be conclusive. Erie Railroad Co. v. Tompkins, 1938, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188.[6]

■ Of course, as we explicitly pointed out in our original opinion certifying the cause, 448 F.2d at 455, the claimed denial of Federal rights secured by the United States Constitution remains for our decision. England v. Louisiana State Board of Medical Examiners, 1964, 375 U.S. 411, 84 S.Ct. 461, 11 L.Ed.2d 440. We agree with the District Court that those teachers who accepted reemployment neither waived nor were thereafter estopped from asserting their right to contest the legality of the disputed payments. Cf. Bumper v. North Carolina, 1968, 391 U.S. 543, 88 S.Ct. 1788, 20 L.Ed.2d 797. But we do not agree that the Board's imposition of the $100 condition violated the teachers' Federal constitutional rights.

Essentially the teachers' theory is that the forced exaction of a $100 payment from each of them in exchange for their returning to work with their pre-resignation status intact amounted to a fine or penalty for a legislatively undefined wrong, violative of their right to procedural due process because they were afforded no hearing or other opportunity to protest the payments or to contest their legality. Phrased another way, the argument is that the teachers were "punished" for their prior concerted efforts to effect changes in State school policies and that such "punishment," in the absence of traditional procedural safeguards, could not be made a condition for reemployment because it compelled the surrender of Fourteenth Amendment rights in return for a job in the Lee County school system.[7]

■ Concededly it is now established to a point beyond all dispute that "public employment, including academic employment, may [not] be conditioned upon the surrender of constitutional rights which could not be abridged by direct governmental action." Keyishian v. Board of Regents, 1967, 385 U.S. 589, 605, 87 S.Ct. 675, 685, 17 L.Ed.2d 629, 642.[8] Denial of a government job solely

---

6. The gist of the teachers' argument is that the Supreme Court of Florida has misapplied the principles of Florida law to the facts of this case by formulating its decision in terms of a legal theory which those facts do not support. The obvious answer is that a Federal court does not second-guess a State's application of its own law. Nelms v. State Farm Mutual Automobile Ins. Co., 5 Cir., 1972, 463 F.2d 1190 [1972].

7. Throughout these proceedings the parties have waged a continuing and for the most part futile dispute over the appropriate characterization of the $100 payments. We find the disagreement inconclusive and irrelevant. Whether the payments are denominated as "fines," "liquidated damages," "contractual consideration," or "conditions for reemployment" has no bearing on the question of whether such payments—regardless of the verbal label attached to them—may be imposed as an involuntary condition of employment on the facts of this case. Cf. Graham v. Richardson, 1971, 403 U.S. 365, 374, 91 S.Ct. 1848, 1853, 29 L.Ed.2d 534, 543, repeating the Supreme Court's consistent rejection of "the concept that constitutional rights turn upon whether a governmental benefit is characterized as a 'right' or as a 'privilege'."

8. See also Pickering v. Board of Education, 1968, 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811; Cramp v. Board of Public Instruction, 1961, 368 U.S. 278, 82 S.Ct. 275, 7 L.Ed.2d 285; Baggett v. Bullitt, 1964, 377 U.S. 360, 84 S.Ct. 1316, 12 L.Ed.2d 377; Wieman v. Updegraff, 1952, 344 U.S. 183, 73 S.Ct. 215, 97 L.Ed.

because an individual refuses to abjure the protection afforded by the United States Constitution amounts to nothing more than an attempt to accomplish indirectly an otherwise impermissible objective—penalization of conduct which is constitutionally insulated against punishment. Speiser v. Randall, 1958, 357 U.S. 513, 526, 78 S.Ct. 1332, 1342, 2 L. Ed.2d 1460, 1473. Consequently, this Court has encountered no difficulty in holding that a Federal claim based upon the allegation that a State has denied public employment solely because of the exercise of a constitutional right will, if proven, entitle the plaintiff to appropriate relief. Sindermann v. Perry, 5 Cir., 1970, 430 F.2d 939, affirmed, 1972, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570; Ferguson v. Thomas, 5 Cir., 1970, 430 F.2d 852; Pred v. Board of Public Instruction, 5 Cir., 1969, 415 F.2d 851.

■ However, none of these cases have any application here unless the teachers were in fact compelled to forego the exercise of a Federal constitutional right in return for reemployment. The critical flaw in their argument is the uncritical (and, on this record, insupportable) assumption that the $100 payments constituted a *deprivation* of property without due process of law within the prohibition of the Fourteenth Amendment. The agreement clearly provided that the teachers would receive a benefit to which concededly they were not otherwise entitled—reemployment with full tenure rights and other accompanying privileges which they had enjoyed before their resignations—in return for a payment of $100. In substance, they were offered an opportunity to surrender one "property right" in order to acquire another "property right" that was plainly of greater value to them.[9] Such a mutually advantageous exchange cannot be characterized as a *deprivation* of property, regardless of whether the teachers' payments are pejoratively denominated as "fines" and regardless of whether the subjective intention of the Board members who voted for it was to "punish" alleged past misconduct.

We do not dispute the District Court's conclusion that the payments were not "voluntary" in any meaningful sense.[10] For that matter *all* exchanges of contractual consideration are "involuntary" to the extent that the contracting parties would much prefer to secure the benefits of the agreement without bearing the inevitable burdens. Likewise we may concede that the teachers here were involuntarily subjected to choosing between paying consideration for an employment benefit of at least equivalent value and foregoing employment altogether. The choice between these options was admittedly coerced. But regardless of whether it was accepted or rejected the Board's offer did not entail a deprivation of property. Accordingly, the payment of the $100 could not have involved the surrender of the right to protection of that property guaranteed

---

216; Truax v. Raich, 1915, 239 U.S. 33, 36 S.Ct. 7, 60 L.Ed. 131.

9. The District Court found it unnecessary to consider this question because of its determination that the payments were illegal under Florida law in any event. 299 F.Supp. at 840, n. 10.

Technically the issue of the comparative value of the $100 payments and the tenure rights which they secured is a factual one that was never stipulated or resolved on motion for summary judgment. However, we have no hesitation in concluding that the fact is not and obviously could not be genuinely disputed. An earlier proposal under which the teachers would return to their jobs as "new teachers" (i. e. without tenure) was rejected by them as wholly unacceptable. 448 F.2d at 454. Pursuant to the agreement that was ultimately adopted approximately 400 teachers paid the $100. Thus there can be no possible doubt that the tenure rights were worth at least $100 to the teachers.

10. "The teachers obviously would have accepted a proposal which would have allowed them to return at their old status but without paying the fine. No one in his right mind insists upon paying a $100 fine when he may choose not to pay it without suffering any other disability." 299 F.Supp. at 841.

by the due process clause of the Fourteenth Amendment.

 Obviously the teachers would be in an entirely different position if they were somehow able to establish that they were legally entitled to tenure without payment of $100 and were therefore unilaterally deprived of that money without due process. Instead they are forced to concede that they had effectively resigned their positions and that the Board was not even legally obligated to rehire them at all. In such circumstances their claim fares no better than that of a teacher who, having neither *de facto* tenure nor an objective expectancy of reemployment, is discharged for unspecified reasons without notice or a hearing. Board of Regents v. Roth, 1972, 408 U.S. 564, 92 S.Ct. 2701, 33 L. Ed.2d 548 [1972]; Sindermann v. Perry, *supra*; Skidmore v. Shamrock Independent School District, 5 Cir., 1972, 464 F.2d 605 [1972]. Absent the invasion of some protected Fourteenth Amendment right, neither notice nor hearing is required.

 The same result obtains if approached outside of a concept of "exchange" of valuable rights. The key to decision, of course, is whether the teachers were forced to give up a constitutional right. Under Florida law they had no right to reemployment, either with or without tenure. Indeed, they had no right to reemployment with tenure. The loss of this right was not due to an exercise of First Amendment rights. It was the result of the purposeful resignations—a right which the earlier state court injunction expressly recognized was theirs. The school authorities did not accede to the demands of the teachers, but it did not prior to the resignations or thereafter deny them any federal constitutional right or impede in any way the unrestricted assertion of them. The teachers sought reemployment and a return to the status of former tenure privileges, a status lost by the resignations. The Florida Supreme Court's obligatory ruling accords to the requirement of a $100 payment the exercise of reasonable judgment on the part of the school authorities and in its exercise we find no element of a denial of a federal right.

The judgment of the District Court is reversed and the cause remanded for entry of judgment in favor of the Lee County Board of Public Instruction.

Reversed and remanded.