732 So.2d 1202 (1999)
Stanley B. BURNS and Eileen Burns, his wife, Appellants,
v.
Daniel M. BARFIELD, Appellee.
No. 98-1962.
District Court of Appeal of Florida, Fourth District.
May 12, 1999.
Rehearing Denied June 16, 1999.
Bradley S. Hartman of Hartman & Goldberg, Cooper City, for appellants.
Barbara J. Compiani of Caruso, Burlington, Bohn & Compiani, P.A. and Searcy, Denney, Scarola, Barnhart & Shipley, P.A., West Palm Beach, for appellee.
HAZOURI, J.
Stanley and Eileen Burns (the Burnses) appeal from final judgment entered upon a jury verdict rendered in favor of Daniel Barfield (Barfield) on a claim by Barfield *1203 against the Burnses for breach of a shareholders' agreement.
The Burnses raise five points on appeal. The first is that the trial court erred in denying the Burnses' motion for directed verdict as to the breach of the shareholders' agreement. We agree and reverse for entry of a directed verdict in favor of the Burnses. Therefore, we need not address the remaining points on appeal.
In 1988 the Burnses, Barfield, Jean Lacerte (Lacerte) and Edward Irwin (Irwin) became involved in a business venture to build an adult congregate living facility (ACLF) on property owned by the Burnses. The original investment in the ACLF venture was $850,000. The venture took an option on the property owned by the Burnses, and they received 10 % interest on the value of the land throughout the entire project. After a few years with limited progress, the investors abandoned the ACLF project and embarked upon a townhouse venture.
In May of 1991, a corporation known as 14th Street, Inc. was formed in order to develop townhouses. The Burnses, Barfield, Lacerte, and Irwin each possessed a 23% interest (2,300 of 10,000 shares) in 14th Street, Inc., with 6% reserved to Jocelyn Lacerte and 2% to Debra Tamasi. The shareholders entered into an agreement which placed the following restrictions on the 14th Street, Inc. stock:
1. The shares of stock held by each of the parties hereby shall be freely transferable to surviving joint tenant or tenant by the entireties, a trustee of an inter vivos or testamentary trust, personal representative of an estate, or the heirs and beneficiaries under a Last Will and Testament of the previous owner of said shares of stock.
2. In the event that any shareholder desires to sell his or her shares of stock, the selling shareholder shall offer to sell his or her interest in the shares of stock to all the other shareholders on the same terms as are contained in a bona fide written offer made by a third party purchaser whose name and address must be stated in said offer. In the event that more than one shareholder wishes to purchase the interest of the selling shareholder, said purchasers shall share in the same ratio as their existing percentage of shares held by each of them bear to one another.
3. The shareholder desiring to sell his or her shares shall give notice in writing of his or her intention to sell said shares together with the materials described above to each of the other shareholders of the corporation by United States certified mail, postage prepaid. The remaining shareholders shall have thirty (30) days from date thereof in which to purchase said interest from the selling shareholder, pursuant to the terms and conditions of the contract offer made by the third person wishing to purchase said shares. The purchasing shareholder shall notify the selling shareholder by notice in writing by United States certified mail, postage prepaid, on or before the thirtieth (30th) day said notice period has expired. The mailing of said acceptance within said thirty-day period shall be considered as sufficient in compliance with said offer by the selling shareholder. The purchasing shareholder or shareholders shall, in that event, carry out the purchase of said stock in accordance with the offer originally submitted.
4. In the event that none of the other shareholders exercise their right to purchase said shares of stock within a thirty-day period provided for above, or having exercised the same should fail to purchase the same within the time prescribed, the right shall be terminated to purchase said shares of stock and the selling shareholder shall be free to sell said stock to a third party, not an existing shareholder, who shall, however, in turn, be bound *1204 by the terms and conditions of these Minutes as fully as if purchaser had been an original subscriber of the capital stock of this corporation.
(Emphasis added.)
As the townhouse project began, 14th Street, Inc. developed the Burnses' land and purchased certain parcels. The townhouse project was to be developed in nine phases, but financial problems arose and construction ceased during phase five. The Burnses became unhappy with the apparent lack of progress and wanted out of the deal as the option on the Burnses' property held by 14th Street, Inc. was due to expire. On April 28, 1994, Irwin and Lacerte purchased the remaining parcels subject to the option agreement from the Burnses. In addition to the land, the Burnses also sold their 2,300 shares of 14th Street, Inc. stock to Irwin and Lacerte and failed to give Barfield prior written notice of their intentions to sell their stock in order to afford Barfield an opportunity to purchase a pro rata share.
After purchasing the land and stock from the Burnses, Irwin and Lacerte formed a new corporation named 14th Street 400, Inc. The assets of 14th Street, Inc. were transferred into 14th Street 400, Inc. by Irwin and Lacerte. The property purchased from the Burnses by Irwin and Lacerte is also owned by 14th Street 400, Inc. Barfield subsequently brought suit because the Burnses sold their stock to Irwin and Lacerte in violation of the shareholders' agreement.
Barfield claimed he was damaged by the Burnses' sale of stock because he was deprived of the opportunity to buy his proportionate share of the stock that was sold to Irwin and Lacerte, and the stock he owns in 14th Street, Inc. was devalued by the transfer of the assets to 14th Street 400, Inc.
At trial, Barfield argued he was entitled to recover the difference between the value of the 767 shares (his relative proportion of 2,300) of the Burnses' stock minus the contract price for which Irwin and Lacerte purchased it. Barfield also argued he was entitled to recover his interest in 14th Street, Inc. because his stock had been devalued. The jury returned a verdict for Barfield in the amount of $211,930.
After the trial, Barfield filed a Motion to Assess Pre-Judgment Interest from April 28, 1994, through the date of the verdict. A final judgment was entered for Barfield in the amount of $211,930 plus prejudgment interest of $71,626.53. The Burnses' post-trial motions were denied, and this appeal followed.
At trial, Barfield contended that the shareholders' agreement prohibited the sale of the Burnses' stock to Lacerte and Irwin without first giving him notice of the proposed sale and an opportunity to purchase his pro rata share, or in the alternative, that the shareholders' agreement was ambiguous on this point and extrinsic evidence could be presented to show the intent of the parties to the shareholders' agreement. The trial court found that the shareholders' agreement was ambiguous and, over the objection of the Burnses, permitted extrinsic evidence to show the intent of the parties.
At the close of the evidence, after having been permitted to reserve at the close of the plaintiff's case, the Burnses moved for a directed verdict as to liability based upon the specific, clear and unambiguous language of the shareholders' agreement that required notice to shareholders of the sale and an opportunity to purchase a pro rata share of the stock for sale only when the sale was to third parties. The motion was denied. The trial court's failure to direct a verdict was erroneous.
The shareholders' agreement at issue provides that the selling shareholder shall offer to sell his or her interest in shares of stock to all other shareholders on the same terms as are contained in a bona fide written offer made by a third party purchaser. Once notice has been given, should none of the other shareholders exercise *1205 their right to purchase said shares of stock, the selling shareholder shall be free to sell such stock to a third party. The triggering event is the offer to sell to a third party. Lacerte and Irwin were parties to the shareholders' agreement, not third parties.
Although contracts are to be construed in order to give effect to the intent of the parties, it is a well settled principle of contract law that where the terms of a contract are unambiguous, the parties' intent must be determined from within the four corners of the document. Misala, Inc. v. Eagles, 662 So.2d 1389 (Fla. 4th DCA 1995). In the absence of ambiguity, the language itself is the best evidence of the parties' intent and its plain meaning controls. Contracts are to be construed in accordance with the plain meaning of the words contained therein. See Fecteau v. Southeast Bank, N.A., 585 So.2d 1005 (Fla. 4th DCA 1991); In Re Estate of Barry, 689 So.2d 1186 (Fla. 4th DCA 1997).
As this court stated in Sugar Cane Growers Coop, of Florida, Inc. v. Pinnock, 24 Fla. L. Weekly D1214, D1216, ___ So.2d ___, ___, 1999 WL 314493 (Fla. 4th DCA May 19, 1999):
Construction of a contract is a matter of law, so an appellate court is free to reassess the contract and arrive at a conclusion different from the trial court. Therefore, we may consider de novo whether the contract terms are unambiguous. Where the language of a contract is clear and unambiguous, there is no need to resort to rules of contract construction or judicial interpretation. (Citations omitted).
In order to determine the plain meaning of "third party," it is prudent to refer to those references relied upon to supply the accepted meanings of words. Such an inquiry reveals that "third party" is commonly defined as a person other than the principals involved in a case or matter. WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY OF THE ENGLISH LANGUAGE UNABRIDGED 2378 (1993). Stated otherwise, "third party" is a term used to include all persons who are not parties to the contract, agreement or instrument of writing in question. BLACK'S LAW DICTIONARY 1122 (6th ed.1990).
Such a reassessment leads to the conclusion that if one is to give effect to the plain meaning of the shareholders' agreement, Lacerte and Irwin were not third parties and thus, the terms of the agreement preclude liability under the facts alleged by Barfield. Accordingly, the trial court's denial of the Burnses' motion for directed verdict is reversed with directions to enter a judgment in favor of the Burnses.
KLEIN and GROSS, JJ., concur.